

**SIGNED this 30th day of March, 2012**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

In re:

STEVE A. McKENZIE                              No. 08-16378
a/k/a Toby McKenzie                            Chapter 7

      Debtor;

GRANT, KONVALINKA & HARRISON, P.C.,

      Plaintiff,

v.                                             Adversary Proceeding
                                               No. 11-1121
RICHARD L. BANKS, RICHARD BANKS
& ASSOCIATES, P.C., C. KENNETH STILL,
and STEVE A. McKENZIE

      Defendants.

1

## MEMORANDUM

Defendant C. Kenneth Still, trustee ("Mr. Still" or "Trustee") moves this court to dismiss the complaint of Plaintiff Grant, Konvalinka & Harrison, P.C. ("GKH") in this adversary proceeding. [Doc. No. 5].[1] GKH opposes the motion of the Trustee. [Doc. No. 8].

The court has reviewed the briefing filed by the parties, the pleadings at issue, and the applicable law and makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. Based on those findings and conclusions, the court will GRANT the motion to dismiss with respect to the Trustee, but will DENY the motion with respect to the other defendants, Richard L. Banks ("Banks"), Richard Banks & Associates, P.C. ("Banks P.C."), and Steve A. McKenzie ("Debtor").

### I.        Background Facts

The court has summarized facts involving these same parties in several other memoranda filed in both the main bankruptcy case and in separate adversary proceedings involving similar allegations. *See, e.g.,* [Adv. Proc. 11-1016, Doc. No. 68; Bankr. Case No. 08-16378, Doc. Nos. 1199, 1354, 1387; Adv. Proc. 11-1110, Doc. No. 25]. However, for ease of reference, the court will review the procedural and factual background here.

### A.        Procedural Background

GKH filed this lawsuit ("HC Malpractice M/P Lawsuit") on August 5, 2011 in the Circuit Court of Hamilton County, Tennessee. [Doc. No. 1-2]. The HC Malpractice M/P Lawsuit Complaint asserts that: (a) GKH is a law firm located in Chattanooga, Tennessee; (b) defendant Richard L. Banks is an attorney who represented both the Trustee and the Debtor in a lawsuit brought against GKH in the Chancery Court of Bradley County, Tennessee, alleging conflicts of

---

[1] All citations to docket entries pertain to docket entries for Adversary Proceeding 11-1121, unless otherwise noted.

interest and breach of fiduciary duty ("Malpractice Lawsuit"); (c) the law firm of Banks P.C. employs Mr. Banks; and (d) the Trustee is the trustee in the Debtor's main bankruptcy case. *See* HC Malpractice M/P Lawsuit Complaint, ¶¶ 1-3. GKH contends that the pursuit of the Malpractice Lawsuit was malicious prosecution and abuse of process.

On the same day GKH filed an almost identical lawsuit in this court. *See* [Adv. Proc. No. 11-1118, Doc. No. 1] ("Bankruptcy Malpractice M/P Lawsuit"). The Trustee subsequently removed the HC Malpractice M/P Lawsuit to this court. [Adv. Proc. No. 11-1121, Doc. No. 1]. GKH moved to remand and/or abstain and/or consolidate this adversary proceeding with Adversary Proceeding Number 11-1118. [Adv. Proc. No. 11-1121, Doc. No. 3 ("Motion for Remand")]. The court is simultaneously issuing its ruling on the Motion for Remand with this memorandum. For the reasons stated in the memorandum pertaining to the Motion for Remand, it is denying the request to remand the claims against the Trustee to state court. It is also denying GKH's request to abstain from ruling on the claims against the Trustee. The court will also issue a ruling on the Trustee's Motion to Dismiss pending in the Bankruptcy Malpractice M/P Lawsuit. The remaining claims in both adversary proceedings against Banks, Banks P.C. and the Debtor will be consolidated and will be remanded to the state court. The consolidated adversary proceeding will be Adv. Pro. No. 11-1121.

### B.    Case Background

On November 20, 2008, a group of petitioning creditors filed an involuntary petition in bankruptcy in this court against the Debtor. *See* [Bankruptcy Case No. 08-16378, Doc. No. 1]. On December 20, 2008, the Debtor filed a Chapter 11 voluntary petition in bankruptcy, Bankruptcy Case No. 08-16987. On January 16, 2009, this court consolidated the two bankruptcy cases. [Bankruptcy Case No. 08-16378, Doc. No. 33].

The court held a hearing on the U.S. Trustee's motion to appoint a trustee on February 19, 2009. [Bankr. Case No. 08-16378, Doc. Nos. 135, 101].  The U.S. Trustee filed a notice appointing Mr. Still Chapter 11 trustee for the Debtor on February 19, 2009; the court issued an order granting the U.S. Trustee's motion to appoint a Chapter 11 Trustee on February 20, 2009. [Bankruptcy Case No. 08-16378, Doc. Nos. 130, 140].  The court converted the case to a Chapter 7 case on June 14, 2010, and Mr. Still continued as the Chapter 7 trustee.  [Bankruptcy Case No. 08-16378, Doc. No. 789].[2]

### C.     Malpractice Lawsuit

On August 6, 2010, the Trustee and the Debtor filed the Malpractice Lawsuit in Bradley County Chancery Court, Docket No. 2010-CV-251, against Nelson Bowers, II; Exit 20 Auto Mall, LLC; John Anderson; and GKH.  *See* [Doc. No. 1-1].  The Trustee and the Debtor asserted causes of action against GKH for breach of fiduciary duty, conflict of interest and civil conspiracy.  *Id.*  It is the prosecution of the Malpractice Lawsuit that is the basis of GKH's malicious prosecution and abuse of process claims in this proceeding.

The HC Malpractice M/P Complaint provides a detailed account of the litigation proceedings that occurred following the Trustee's filing of the Malpractice Lawsuit.  This court reviewed substantially similar allegations by GKH in the briefs filed in support of GKH's motion for leave to file such a malicious prosecution and abuse of process action against the Trustee and his counsel in Bradley County, Tennessee ("Bradley Leave Motion") that was filed in the main

---

[2] GKH asserts that there is no order appointing Mr. Still as the Chapter 7 trustee following the Chapter 7 conversion. *See* [Adv. Proc. No. 11-1118, Doc. No. 21, p. 2], incorporated by reference by [Doc. No. 8]. Although a bankruptcy court issues an order appointing a Chapter 11 trustee, the court does not issue an order appointing an interim trustee in a Chapter 7. The U.S. Trustee appoints the interim Chapter 7 trustee who becomes the trustee unless there is an objection or an election.  *See* 11 U.S.C. § 701(a)(1).  The docket in the Debtor's main bankruptcy case indicates that the U.S. Trustee convened a meeting of creditors after the conversion, and an amended notice was sent to creditors reflecting that Mr. Still was the Chapter 7 trustee in the case.  [Bankr. Case No. 08-16378, Doc. No. 792].

bankruptcy case. *See* [Bankr. Case No. 08-16378, Doc. Nos. 1200, 1248, 1248-1 through 1248-6, 1307, 1307-1 through 1307-7, 1387]. The court denied leave to file the action in Bradley County on August 5, 2011. [Doc. Nos. 1387, 1388]. In response, GKH filed the Bankruptcy Malpractice M/P Lawsuit asserting those claims of malicious prosecution and abuse of process against the Trustee and other defendants arising out of the Malpractice Lawsuit in addition to this adversary proceeding.

Attached to the HC Malpractice M/P Complaint are numerous exhibits that all relate to the parties' disputes arising in the Malpractice Lawsuit. The court has had a prior opportunity to examine many of these exhibits in detail as most of the exhibits were provided to the court in support of the Bradley Leave Motion. *See* [Bankr. Case No. 08-16378, Doc. Nos. 1248-1 through 1248-6; 1307-1 through 1307-7]. The exhibits include a copy of the complaint filed in the Malpractice Lawsuit with all of its attachments; the complaint filed by the Trustee and the Debtor in this court as Adversary Proceeding No. 10-1407 with all of its attachments; transcripts of hearings held in the Malpractice Lawsuit; motions to dismiss filed by the defendants in the Malpractice Lawsuit; a transcript of Judge Cook's opinion in Adversary Proceeding No. 10-1407; briefs filed by the plaintiffs in the Malpractice Lawsuit with GKH's and John Anderson's response; GKH's and John Anderson's motion to compel filed in the Malpractice Lawsuit; motion for joinder and responses; the Bradley County Chancery Court's order of dismissal of the plaintiff's breach of fiduciary duty and conflict of interest claims on statute of limitations grounds; transcript of a hearing in the Malpractice Lawsuit held on February 22, 2011; and an agreed order entered by the chancery court. *See* [Doc. Nos. 1-1 through 1-17]. Many of the issues discussed in the court's memorandum issued in conjunction with its denial of the Bradley

Leave Motion are relevant to this memorandum.  *See* [Bankr. Case No. 08-16378, Doc. No.

1387].

Additionally, the court has already reviewed the underlying circumstances pertaining to

the Malpractice Lawsuit and an accompanying avoidance action lawsuit brought by the Trustee

in this court, *Still v. Bowers, II, et al.,* Adv. Pro. No. 10-1407 ("50 Acre Lawsuit").  In its

memorandum denying the Bradley Leave Motion, the court previously found the following

related to the two suits brought against GKH and others by the Trustee:

> On August 5, 2010, the Trustee brought an action against Nelson
> E. Bowers II, Exit 20 Auto Mall, LLC, John Anderson, Grant,
> Konvalinka and Harrison, PC, and CapitalMark Bank & Trust.
> [Adv. No. 10-1407, ("Trustee's Complaint")].  The Trustee's
> Complaint was signed by Mr. Banks and Mr. LeRoy as counsel for
> Mr. Still.  *See* [Adv. No. 10-1407, Doc. No. 1].

> The enumerated causes of action in the Trustee's Complaint were
> violation of the automatic stay, avoidance of post petition transfers,
> avoidance of preferences, avoidance of fraudulent transfers, an
> action to determine the validity of a lien, equitable subordination,
> and preference claims against insiders. The Trustee's Complaint
> sought to avoid a post petition transfer of approximately sixty acres
> of real estate located in Bradley County, Tennessee.  Based on
> filings with the Tennessee Secretary of State and the Register's
> Office of Bradley County which were attached to the Trustee's
> Complaint and on which Judge John C. Cook relied in his
> dismissal, [Adv. No. 10-1407, Doc. No. 1]; [Transcript, Adv. No.
> 10-1407 at pp. 8-9], the transferor was Cleveland Auto Mall, LLC
> whose members were the debtor and Mr. Nelson E. Bowers, II.
> The transferee company was Exit 20 Auto Mall, LLC, formed
> December 10, 2008, organized by Wayne Grant, who also served
> as registered agent with an address at 633 Chestnut Street,
> Chattanooga, TN.  The deed was dated December 10, 2008,
> approximately twenty days after the involuntary filing.  The deed
> reflects that it was "Prepared by and [to be returned] to Grant,
> Konvalinka & Harrison, P.C., Ninth  Floor - Republic Centre, 633
> Chestnut Street, Chattanooga, TN 37450-0900."  *See* [Adv. No.
> 10-1407, Doc. No 1, p. 47]. The Affidavit of Value on the deed
> was signed by Nelson E. Bowers, II as Chief Manager and showed
> a value of $4,000,000. The Trustee's Complaint also had attached
> a Deed of Trust from Cleveland Auto Mall, LLC to Suntrust Bank

6

dated February 24, 2006, securing approximately $3,800,000 in debt.

   The court granted the motion of CapitalMark Bank & Trust for a judgment on the pleadings and granted the Motion of GKH to dismiss the Trustee's Complaint on December 16, 2010. [Adv. No. 10-1407, Doc. No. 67]. The court could not find any allegation of a transfer of property of the debtor or the estate. It found that the transfers alleged to have been made were of property owned by the limited liability company based on the documentation attached to the complaint. With respect to the allegation regarding equitable subordination, the court found the claim was insufficient to support a claim for equitable subordination because the pleadings demonstrated no actions against property of the estate or the debtor. [Transcript, Adv. No. 10-1407 at p. 11].

GKH is also a creditor in the case. It filed a secured claim for $406,828.51 on April 27, 2009. [Bankr. Case. No. 08-16378, Claim 86-1]. This claim reflected that the collateral securing its debt was real property. GKH amended its claim on February 9, 2011, to increase the amount owed to $750,000 and reflected that its collateral was real estate and "other." It attached a promissory note dated October 24, 2008, and a pledge agreement dated October 13, 2008, between the debtor and GKH, pledging a number of equity interests of the debtor. [Bankr. Case. No. 08-16378, Claim 86-2]. GKH also attached an amended pledge agreement dated October 29, 2008, which pledged additional equity interests including the debtor's interest in Cleveland Auto Mall, LLC. GKH also attached three deeds of trust on certain real estate of the debtor pledged on October 24, 2008. [Bankr. Case. No. 08-16378, Claim 86-2, Parts 5, 6, and 7]. The amended pledge agreement recited that "Whereas, Pledgee has provided as of the date hereof to the Pledgor and the various Companies legal services in the amount of at least $385,000 ("Legal Services"); and Whereas, in order to induce Pledgee to continue to provide legal services to Pledgor and the Companies, Pledgor has agreed to pledge to Pledgee all of his interests as set forth on Exhibit 'A'". The entities listed on Exhibit A were defined as the "Companies." *Id.* Part 4, Amendment to Membership Interest and Stock Pledge Agreement at 1. The services to be provided would be "in an amount of at least $750,000." *Id.*

In addition to the 50 Acre Lawsuit, on August 6, 2010, the Trustee also joined the Debtor in filing the Malpractice Lawsuit seeking damages for breach of fiduciary duty, conflicts of interest and conspiracy by GKH and Nelson Bowers and the

transferee of the 50 acres. Like the 50 Acre Lawsuit, the complaint in Bradley County alleged that Cleveland Auto Mall, LLC ("CAM") was owned by Mr. Bowers and the Debtor, that CAM owned 50 acres in Bradley County, Tennessee, that the property was worth $250,000 an acre, that ten acres had been transferred to NBR TOY Properties, LLC for $1,002,000 but CAM had not received payment for the transfer, that the Debtor was suffering severe health problems in December of 2009, that GKH[,] which had been counsel for the Debtor and his entities[,] had drafted the documents that transferred those acres to a limited liability company owned by Mr. Bowers, and that Mr. McKenzie signed a deed as a member of CAM conveying the 50 acres to Exit 20 Auto Mall, LLC, an entity owned at least in part by Mr. Bowers. Like the 50 Acre Lawsuit, the only allegation about the debt of CAM was that it owed $3,000,000 to SunTrust Bank. There was no allegation specifically addressing the value of the debtor's equity at the time of the transfer.

The Trustee and his counsel fared no better in the Malpractice Lawsuit than they had in the 50 Acre Lawsuit. The complaint was met with motions to dismiss from GKH and Nelson Bowers. GKH first raised the defense of the statute of limitations. It argued that "if McKenzie suffered a legally cognizable injury resulting from the events described in the complaint as occurring on December 10, 2008, clearly McKenzie either knew, or should have known, the facts sufficient to give notice of the injury at that time since the allegation[s] of the complaint admit that McKenzie was intimately involved." [Doc. No. 1248-1, Motion to Dismiss by GKH, at 11]. On November 2, 2010, Mr. Bowers also filed a motion to dismiss the first two counts based on the failure of the complaint to state a viable cause of action, the expiration of the statute of limitations, and lack of any fiduciary duty owed by Mr. Bowers. The motion sought dismissal of the third count of conspiracy between the defendants based on there having been no violation of the stay and the plaintiffs' failure to state a viable cause of action with respect to fraudulent transfer, fraudulent misrepresentation or fraudulent concealment. [Doc. No. 1248-2, Motion to Dismiss by Nelson Bowers at 2-3]. On January 4, 2010, GKH joined the Bowers motion to dismiss.

The Trustee and the Debtor responded on January 5, 2010 with a Memorandum of Authorities and a Motion for Joinder of an Indispensable Party. The indispensable party was CAM. GKH contends that these January filings, made after the bankruptcy court's December ruling that the 50 acres was not property of the estate, give rise to additional damages. GKH contends that the Trustee failed to acknowledge the "clear preclusive effect" of the bankruptcy court's ruling in the 50 Acre Lawsuit. [Doc. No. 1307, Brief in Support of GKH's Motion for Leave to File Action in Bradley County at 17]. On January 26, 2011, the Chancellor found that the affidavit filed by the Debtor and the Trustee was "not sufficient to raise the issue of tolling of the Statute of Limitations under the case law in Tennessee." [Doc. No. 1248-5, Chancellor's Order, January 25, 2011]. The Chancellor granted the motion to dismiss with respect to causes of action related

to breaches of fiduciary duty and conflicts of interest based on his finding that those two causes of action had a one year statute of limitations. *Id.*

On February 22, 2011, the Trustee and the Debtor announced in open court that they were going to submit an order which would provide that the January 25, 2011 Order would be a final dismissal as to all defendants and all counts. That announcement was memorialized in an order entered on March 4, 2011. [Doc. No. 1200-2, Ex. B, Chancellor's Agreed Order].

[Bankr. Case. No. 08-16378, Doc. No. 1387, pp. 5-8 (footnotes omitted) (quoting Bankr. Case

No. 08-16378, Doc. No. 1199, pp. 2-5, Memorandum Opinion relating to GKH's Motion to

Clarify)].

In the Malpractice Lawsuit, the parties briefed the legal arguments regarding the statute

of limitations for the Chancellor, and those arguments are included in the exhibits to HC

Malpractice M/P Complaint. [Doc. No. 1-8, No. 1-13, pp. 15-18]. The Trustee did not appeal the

Chancellor's ruling. The Trustee now contends that the Chancellor erred in finding that a one

year statute of limitations applied to his causes of action and cites 11 U.S.C. § 108(a) for the

proposition that a bankruptcy trustee has two years to bring a suit for causes of action which

accrued prior to the commencement of the case. Because of the filing of an involuntary followed

by a voluntary case, the Trustee contends that the commencement of the case for purposes of the

creation of an estate is December 20, 2008, and the statute would not have run until December

20, 2010. *See* [Adv. Proc. No. 11-1118, Doc. No. 18, Trustee's Memorandum in Support of

Motion to Dismiss at 8]; [Doc. No. 5 ].

### D.     Related Malicious Prosecution/ Abuse of Process Claims

After the court dismissed the 50 Acre Lawsuit, GKH filed a lawsuit alleging that the 50

Acre Lawsuit brought by the Trustee was malicious prosecution and an abuse of process. *Grant,*

*Konvalinka & Harrison, P.C. v. Banks, et al.,* Adv. Pro. 11-1016 ("50 Acre M/P Lawsuit").

GKH also brought a malicious prosecution and abuse of process suit against the Trustee and his

9

counsel arising out of an action for the turnover of documents. *Grant, Konvalinka & Harrison, P.C. v. Leroy et al.,* Adv. Pro. 11-1110 ("Turnover M/P Lawsuit"). Both of these adversary proceedings have been dismissed by the court and are on appeal to the district court.  The court dismissed the 50 Acre M/P Lawsuit on the basis that the Trustee was immune from suit. The court found that pursuing the 50 Acre Lawsuit – albeit unsuccessfully - was still within the scope of his duties.

### E.     Comparison of Two Malicious Prosecution Cases Arising from Claims Brought Based on the Same Operative Facts

While the HC Malpractice M/P Lawsuit Complaint is very similar to the one filed in the 50 Acre M/P Lawsuit, there are significant differences that require the court to consider whether the court's prior rulings are equally applicable to this motion. First, the parties are different.  In the 50 Acre Lawsuit, the only plaintiff was the Trustee pursuing bankruptcy avoidance actions to bring property into the estate which he alleged had been transferred from the Debtor. The 50 Acre M/P Lawsuit named only the Trustee and his counsel as defendants.  In the Malpractice Lawsuit, there were two plaintiffs. The Trustee, joined by the Debtor, filed the complaint. Banks and Banks, P.C. represented the Debtor **and** the Trustee. Specifically, the complaint states that "Steve A. 'Toby' McKenzie… brings this case in an individual capacity for the damages he has sustained after the filing of his bankruptcy, which are not part of his bankruptcy estate. He joins with the Plaintiff, C. Kenneth Still, Trustee in seeking relief and damages against the defendants for all pre-petition acts of the defendants." [Doc. No. 1-1, Malpractice Lawsuit Complaint at 2, ¶ 4, Doc. No. 1-1].

Second, the causes of action which GKH alleges were maliciously pursued are different, as are the recoveries sought by the Trustee and the Debtor. In the 50 Acre Lawsuit the court found that the Trustee was trying to recover the 50 acres of real property transferred - not from

the Debtor - but from a limited liability company. The statutory bases for the Trustee's claims

were 11 U.S.C. §§ 362, 510, 547, 548, 549 and 550. The 50 Acre Lawsuit Complaint

alternatively asked for the value of the property transferred. In the Malpractice Lawsuit the

parties were seeking damages for conflicts of interest, breach of fiduciary duty, malpractice and

civil conspiracy to violate the bankruptcy stay or to make a fraudulent transfer arising from

GKH's participation in the transactions of December 10, 2008.  The merits of the allegations of

conflicts of interest and breach of fiduciary duty arising from GKH's role in the postpetition

transactions of December 10, 2009 have never been litigated. The Chancellor dismissed those

counts, concluding that they were not raised until after the statute of limitations had run.

 The Trustee and the Debtor argued that the statute should be tolled for two reasons. First,

they argued that the statute should be tolled because the malpractice had not been discovered at

the time it occurred and that it should be tolled because of the Debtor's diminished capacity. The

Trustee also argued that he had two years after the commencement of the case to pursue the

cause of action pursuant to 11 U.S.C. § 108. [Doc. No. 1-8]. GKH argued that the discovery rule

should not apply since the Debtor signed the documents and that the defense of diminished

capacity had not been sufficiently shown to cover the entire period needed for tolling. With

respect to the Trustee's tolling argument, GKH argued that the two-year statute granted in

section 108 had been construed in bankruptcy case law to apply only to causes of action that

accrued prepetition. [Doc. No. 1-13].  GKH argued that all of the actions on which the Trustee's

claims were based occurred after the commencement of the involuntary case; therefore, only the

one-year Tennessee statute of limitations applied. The Chancellor found that:

> the Affidavit [filed by the Plaintiffs] [was] not sufficient to raise the issue of
> tolling the Statute of Limitations under the case law in Tennessee. Therefore, the
> Complaint of Plaintiffs that alleges breach of fiduciary duty and conflict of
> interest arising out of the signing of a deed on December, 2008 are hereby

dismissed because these two causes of action have a one year Statute of
Limitations.

[Doc. No. 1-14].

## II.   Jurisdiction

This court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1334. This matter is a

core proceeding as it involves the administration of the estate and the liquidation of assets of the

estate. 28 U.S.C. § 157(b)(2)(A) and (O). Specifically, malicious prosecution and abuse of

process actions against a trustee are core proceedings. *Kirk v. Hendon (In re Heinsohn)*, 247 B.R.

237, 244 (E.D. Tenn. 2000).

## III.   Standard of Review

Federal Rule of Bankruptcy Procedure 7012(b) states that Federal Rule of Civil

Procedure 12(b) applies to adversary proceedings.  *See* Fed. R. Bankr. P. 7012(b).  Federal Rule

of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a

claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  In reviewing a motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must read all well-pleaded

allegations of the complaint as true."  *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir.

1997) (citing *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)).  In addition, a

court must construe all allegations in the light most favorable to the plaintiff.  *Bower*, 96 F.3d at

203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct.

1955, 1969 (2007).  The complaint "must contain either direct or inferential allegations with

respect to all material elements necessary to sustain a recovery under some viable legal theory."

*Weiner*, 108 F.3d at 88 (citing *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993)).  In *Twombly* the Supreme Court emphasized that:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. at 555, 127 S.Ct. at 1964-65 (citations omitted).  *See also, Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986) (noting that "[a]lthough for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation"). The Supreme Court has further clarified that *Twombly* is not limited "to pleadings made in the context of an antitrust dispute." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1953 (2009).

IV.   **Analysis**

A.   **Immunity**

The Trustee argues that he is immune from liability for activities taken in his capacity as a bankruptcy trustee. GKH asserts that the Trustee's and the Debtor's claims in the Malpractice Lawsuit were "meritless" as evidenced by the Chancery Court's dismissal of the Malpractice Lawsuit and, in particular, by the Chancellor's finding that the Malpractice Lawsuit against GKH was filed after the statute of limitations had run. GKH contends that the Debtor and Trustee should have known that the Malpractice Lawsuit was filed outside of the relevant statute of limitations. From that fact, GKH asks the court to infer that the bringing of such an action was for the purpose of extorting money from GKH, and therefore was an intentional and deliberate act of malicious prosecution. GKH then asks this court to conclude that the commission of

13

intentional torts is outside the scope of actions that a trustee may take with immunity.

Furthermore, GKH contends that the continued pursuit of claims for conspiracy to commit a

fraudulent transfer or to violate the automatic stay, both of which require a finding of a transfer

of property of the debtor or the estate, after a ruling was made in the 50 Acre Lawsuit that no

property of the Debtor or the estate had been transferred, is an abuse of process. GKH asks the

court to infer from the dismissal of the 50 Acre Lawsuit, that the Trustee knew or should have

known that his remaining causes of action were also "meritless," and the continued pursuit of

those causes of action was an abuse of process, another intentional tort which must also be

outside the scope of the Trustee's duties. In order to analyze GKH's position, the court will

examine the scope of the Trustee's duties, consider whether bringing this suit was within that

scope and finally, consider whether any exceptions to the doctrine of immunity are present in this

case.

### 1.      Trustee's Duties under the Bankruptcy Code

This court has already reviewed the doctrine of immunity as it applies to trustees in

bankruptcy in several opinions.  *See* [Adv. Proc. No. 11-1016, Doc. No. 68; Bankr. Case No. 08-

16378, Doc. Nos.  1354, 1387; Adv. Proc. No. 11-1110, Doc. No. 25].  The court begins its

analysis of immunity with a review of some of the duties at the heart of a trustee's obligations in

representing a Chapter 7 bankruptcy estate.  11 U.S.C. § 704 requires the trustee to "collect and

reduce to money the property of the estate for which such trustee serves, and close such estate as

expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. §

704(a)(1).  The trustee must further "investigate the financial affairs of the debtor." 11 U.S.C. §

704(a)(4).  A trustee in bankruptcy is given a number of powers relating to his duties under 11

U.S.C. § 704. One of these powers is the "capacity to sue." 11 U.S.C. § 323(b).

As for the estate he is charged with administering, it is created upon the filing of a petition in bankruptcy and includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Additional property may be added. The estate also includes "any interest in property that the trustee recovers under section…550…of this title" and "[a]ny interest in property that the estate acquires after the commencement of the case."  11 U.S.C. § 541(a)(3) and (7).  In a Chapter 11 case, the property the Debtor acquires postpetition before conversion or dismissal is also property of the estate. 11 U.S.C. § 1115(a).

One of GKH's arguments supporting its contention that the Trustee is not entitled to immunity is that he was not pursuing property for the benefit of the estate, and was therefore acting outside the scope of his duties. This contention is based on the ruling that the 50 acres was not the Debtor's property. As part of this court's analysis of the scope of the Trustee's duties, the court must review what the Trustee was pursuing in the Malpractice Lawsuit and whether that was for the benefit of the estate. The Malpractice Lawsuit Complaint describes the Trustee's role in the Malpractice Lawsuit.  He was pursuing damages from GKH for their prepetition actions. Resolution of those claims may have required ownership of the 50 acres to be proven as one of their elements, but there was no action to seize or exert control over GKH's property. To the extent that there are any damages sought that were not property of the estate, those claims were asserted by the Debtor. [Doc. No. 1-1, Complaint, Bradley County Chancery Court, No. 2010-CV-251 at 2].

To the extent that causes of action accrued prior to November 20, 2008, the date the involuntary case was commenced, the causes of action would be property of the estate. 11 U.S.C. §541(a)(1).  "'It is well-established that the broad scope of § 541 encompasses causes of action existing at the time of the commencement of the bankruptcy action.'" *In re Bailey*, 421 B.R. 841,

848 (Bankr. N.D. Ohio 2009) (quoting *In re Carson*, 82 B.R. 847, 851 (Bankr. S.D. Ohio 1987)).

*See also*, *Bauer v. Commerce Union Bank, Clarksville, Tennessee*, 859 F.2d 438, 441 (6th Cir.

1988) (only Chapter 7 trustee had standing to bring cause of action); *Clarke v. United Parcel

Service*, *Inc.*, 421 B.R. 436 (W.D. Tenn. 2010) (trustee and Chapter 13 debtor have concurrent

standing).

In *In re Lawrence* the district court explained:

> [i]t is the Trustee who has the exclusive standing and capacity to sue and be sued
> on behalf of the bankruptcy estate under 11 U.S.C. § 323(b).  The Trustee is
> appointed by the Bankruptcy Court to take charge of the debtor's estate, collect
> assets, bring suit on the debtor's claims against other persons, defend actions
> against the estate, and otherwise administer the estate.

*Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 801 (E.D. Tenn. 1998) (citations omitted).

Moreover, "[t]he trustee is the representative of the estate, 11 U.S.C. § 323(a), and it . . .

is authorized, *with or without court approval*, to 'commence and prosecute any action or

proceeding in behalf of the estate in any tribunal.'" *Hays and Co. v. Merrill Lynch, Pierce,

Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 n.6 (3d Cir. 1989) (emphasis added) (quoting Fed. R.

Bankr. P. 6009).

Applying 11 U.S.C. §§ 704(a)(1), 704(a)(4), 1115, and 323(b), the court concludes that

the Malpractice Lawsuit related directly to the Trustee's statutory duties of collecting assets,

pursuing property of the estate and investigating the Debtor's financial affairs.  Thus, the court

finds that the filing of the Malpractice Lawsuit was within the scope of the Trustee's duties

pursuant to the Bankruptcy Code.

### 2.      Doctrine of Immunity as Applied to Bankruptcy Trustees

In *Kirk v. Hendon (In re Heinsohn)*, the bankruptcy court addressed the immunity of a

trustee from state law claims of malicious prosecution and defamation that the trustee defendant

had removed to the bankruptcy court. 231 B.R. 48, 50 (Bankr. E.D. Tenn. 1999).  The

bankruptcy court reviewed the plaintiff's motion for remand or abstention and the defendant

trustee's motion to dismiss.  It granted the trustee's motion to dismiss and denied the plaintiff's

motions.  *Id.*  The plaintiff alleged that the trustee initiated a criminal action against him for an

improper purpose and without probable cause.  *Id.*  He sued the trustee for malicious prosecution

following his acquittal from criminal charges of bankruptcy fraud and conspiracy to commit

bankruptcy fraud.

After determining that it had jurisdiction over the plaintiff's claims and that those claims

constituted core proceedings, the bankruptcy court concluded that the trustee had absolute

judicial immunity for his actions in making the criminal referral relating to the plaintiff.   In a

detailed opinion, the bankruptcy court reviewed the evolution of absolute immunity for trustees

acting within the scope of their duties as defined by the Bankruptcy Code.  The bankruptcy court

concluded that the trustee's duty to report possible violations of federal law was analogous to a

prosecutor's duties, and he was entitled to immunity for such actions.  *In re Heinsohn*, 231 B.R.

at 62.  The court explained:

> . . . the reasoning which supports full immunity from malicious prosecution
> actions for prosecutors applies equally to trustees:
>
>> [T]he risk of injury to the judicial process from a rule permitting
>> malicious prosecution suits against prosecutors is real.  There is no
>> one to sue the prosecutor for an erroneous decision *Not* to
>> prosecute.  If suits for malicious prosecution were permitted, the
>> prosecutor's incentive would always be not to bring charges.
>
> Similarly, if trustees are subject to suit and liability for their actions in reporting
> possible criminal violations to the prosecuting authorities, no trustee would ever
> make a referral.  No trustee would run the risk of damages being assessed against
> him for making a referral based on often incomplete information which produces
> no monetary benefit to the trustee since a trustee's primary obligation is to collect
> and liquidate assets of the estate, not report crimes.  Yet a trustee is in a unique
> position to discover possible bankruptcy crimes since his duties require him to
> "investigate the financial affairs of the debtor."  To expose a trustee to the
> potential for liability for complying with his obligations under 18 U.S.C. § 3057

would emasculate an important public function which a trustee is in a distinct
position to fulfill.

*In re Heinsohn*, 231 B.R. at 63 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 438, 96 S.Ct. 984

(1976) (emphasis in original) and 11 U.S.C. § 704(4)).

    The bankruptcy court further acknowledged that other safeguards existed to protect

against prosecutorial abuses, including "an investigation and independent review by the United

States attorney" that serve to "lessen the possibility that an innocent party will be harmed by a

misguided or even malicious trustee." *Id.* After reviewing the landscape of analogous cases, the

court concluded that:

> [b]ased on the foregoing analysis that the function performed by a bankruptcy
> trustee in reporting possible criminal violations to the United States attorney is
> judicial in nature, that there are adequate safeguards to reduce the possibility of
> harm to an innocent party, and that subjecting a trustee to liability in this instance
> would deter the trustee from complying with his obligations under 18 U.S.C. §
> 3057, this court concludes that the defendant is protected by absolute immunity
> from the plaintiff's malicious prosecution action.

*In re Heinsohn*, 231 B.R. at 64. The court distinguished cases concerning a malicious

prosecution claim involving third party nonbeneficiaries from suits by beneficiaries of the

bankruptcy estate involving a breach of the trustee's fiduciary duty. *Id.* at 65-66.

    The district court affirmed the bankruptcy court's decision in *Kirk v. Hendon (In re*

*Heinsohn)*, 247 B.R. 237 (E.D. Tenn. 2000). The district court explained:

> [t]he Court agrees with the bankruptcy court the trustee's obligation to report
> perceived violations of federal law to the United States attorney and to cooperate
> with any ensuing investigation and prosecution is a task integral to the judicial
> process which must be immune from suits for money damages. Government
> officials must be free to execute their duties without the threat of lawsuits. If
> lawsuits, in particular malicious prosecution and defamation actions such as in
> this case, are allowed against trustees for making criminal referrals, trustees will
> be less inclined to perform these duties and will hesitate in the future to do so,
> thereby lessening the impact and defeating the purpose of the criminal referral
> statute.

*Id.* at 245.

The present case does not involve a criminal referral, but the Sixth Circuit has found that similar policy reasons apply in cases where the trustee was engaged in civil actions. In *Lowenbraun v. Canary (In re Lowenbraun)*, the Sixth Circuit reviewed whether a trustee was protected by immunity from claims of libel, slander, abuse of process, wrongful use of civil proceedings and the tort of outrage brought against him by the debtor's wife in response to an unsuccessful motion for contempt brought by the trustee.  453 F.3d 314, 319 (6th Cir. 2006).  The debtor's wife initiated suit against the trustee defendant in state court, and the trustee removed the case to bankruptcy court.  The plaintiff moved for remand or abstention, and the bankruptcy court denied the motion.  It then granted summary judgment to the trustee on immunity grounds. The district court affirmed the bankruptcy court decision, and the plaintiff appealed.  *Id.* The Sixth Circuit reviewed cases pertaining to trustee immunity, including *In re Heinsohn*, and held that the trustee was entitled to immunity for both his judicial and extra-judicial statements regarding missing funds.  *Id.* at 322-23.  The Court noted:

> [The trustee's attorney's] role as counsel for the trustee permitted him to investigate [the debtor's wife's] transfer and to recover assets properly belonging to the bankruptcy estate. [The trustee's attorney's] actions, moreover, benefitted the estate. . . . Any statements made in the course of [the trustee's attorney's] investigation and recovery effort were thus within the privilege. [The trustee's attorney] is therefore entitled to immunity for his judicial statements.

*Id.* at 323.

Courts in other jurisdictions have also determined that bankruptcy trustees are entitled to immunity when performing duties outlined for them in the Bankruptcy Code.  For example in *Traina v. Blanchard*, the district court concluded that:

> [c]ourt appointed bankruptcy trustees are among those who play a fundamental role in the administration of the judicial process and therefore are entitled to immunity.  "Judicial immunity not only protects judges against suit for acts done

within their jurisdiction, but also spreads outward to shield related public
servants, including . . . trustees in bankruptcy . . . ." Judicial employees enjoy
absolute immunity for quasi-judicial acts done in the course of their employment.
Quasi-judicial acts include those which play a fundamental role to the judicial
process. . . . The role of a Chapter 7 bankruptcy trustee, appointed by a
bankruptcy judge, is fundamental to the administration of the estate. A Chapter 7
trustee performing the required functions established by the Bankruptcy Code,
[the trustee] is cloaked with the protection given to judicial employees carrying
out duties in the scope of their employment.

No. 97-0348, 1998 WL 483485, at * 2 (E.D. La. Aug. 13, 1998) (quoting *Wickstrom v. Ebert*,

585 F.Supp. 924, 934 (E.D. Wis. 1984)).

The Sixth Circuit and courts within this Circuit have consistently presumed that the

trustee is acting within the scope of his authority as a trustee. For example, in *In re Heinsohn*,

the district court, in affirming the bankruptcy court's opinion, noted that "[t]he Court presumes

such acts were a part of the trustee's duties unless Plaintiff initially alleges at the outset facts

demonstrating otherwise." 247 B.R. at 246. In considering the district court's presumption, the

Sixth Circuit noted in *In re Lowenbraun*:

This presumption strikes us as persuasive. Congress intended for the Bankruptcy
Code to be comprehensive and for the federal courts to have exclusive jurisdiction
over bankruptcy matters. A presumption in favor of the trustee, counsel, or other
bankruptcy official that they were acting within the scope of their duties prevents
a plaintiff . . . from making unsupported allegations in an attempt to defeat
Congress's goal of providing exclusive federal jurisdiction over bankruptcy
matters.

453 F.3d at 322. *See also, Unencumbered Assets Trust v. Hampton-Stein (In re National*

*Century Fin. Enterpr., Inc.)*, 426 B.R. 282, 292 (Bankr. S.D. Ohio 2010).

Like the plaintiff in *Lowenbraun*, GKH alleges that the Trustee brought the action "with

malice for an improper or wrongful motive and in an attempt to extort settlement proceeds from

GKH in the hopes that GKH would pay to avoid the expense and publicity of litigation." [Doc.

No. 1-1 at 21, ¶ 34]. The support for this statement is, first, the Bradley County Chancellor's

20

finding that the statute of limitations had run on two of the causes of action. GKH alleges that the

Trustee failed to research the issue or intentionally ignored the status of the law. *Id.* at ¶ 33.

Second, the Trustee pursued claims that required a showing that there had been a transfer of

property of the Debtor. GKH argues that this court's opinion found that there was no transfer of

property of this Debtor and a review of the case law would have put the Trustee on notice that

his cause of action would not be successful. *Id.* Again, GKH relies on the Trustee's legal

positions as the evidence of an improper motive. With respect to the first contention, the Trustee

raised opposition to the defense of the statute of limitations based on the Debtor's medical

condition and an interpretation of the bankruptcy tolling statute. With respect to the second

contention regarding property of the estate, this court has previously noted the cases that have

found the removal of the value of limited liability interests constitutes a transfer of property of

the debtor for discharge purposes, and the unusual circumstances of the December 10, 2008

transaction that might cause a "light bulb to go off in a trustee's head" that he needed to pursue

these facts further. [Adv. Proc. No. 10-1016, Doc. No. 68, Memorandum Dismissing 50 Acre

Lawsuit, p. 21]. This court cannot draw an inference that the unsuccessful litigation of two

contested legal issues is evidence of malice on the part of the Trustee. Nor is that allegation

sufficient to overcome the presumption that the Trustee's actions were within the scope of his

authority.

In *Picard v. Chais, et al. (In re Bernard L. Madoff Investment Securities, LLC)*, the

bankruptcy court granted the trustee's motion to dismiss counterclaims of tortious interference

with contract, tortious interference with a business relationship, conversion, and a Fifth

Amendment claim asserted by the defendants.  440 B.R. 282, 286 (Bankr. S.D.N.Y. 2010).  The

bankruptcy court concluded that the counterclaims "must be dismissed because the Trustee sent

the Letter [warning of possible violations of the automatic stay] in good faith within the scope of

his duties, and is therefore immune from liability." *Id.* at 290. In its analysis, the bankruptcy

court noted that "[i]n the Second Circuit, a bankruptcy trustee is a quasi-judicial official

'immune from suit for personal liability for acts taken as a matter of business judgment in acting

in accordance with statutory or other duty or pursuant to court order.'" *Id.* (quoting *In re Smith*,

400 B.R. 370, 377 (Bankr. E.D. N.Y. 2009).

In addressing whether the trustee was only protected by qualified immunity pursuant to

an exception to the immunity doctrine in the Second Circuit, the bankruptcy court explained the

policy behind trustee immunity. *In re Bernard L. Madoff Investment Securities, LLC*, 440 B.R.

at 292. It noted:

> . . . sound policy counsels in favor of providing immunity for trustees in cases
> such as this one. **A trustee should be shielded from liability for his lawful
> exercises of judgment and discretion, even if, in hindsight, such
> interpretations of law were incorrect.** If immunity applied only to decisions
> that turned out to be proper, there would be no need for the doctrine of immunity.
> Here, a determination that the Trustee can be held liable would deter future
> trustees for fear they could be held liable for every discretionary decision. . . . The
> Court cannot impose liability on the Trustee for carrying out his duties in good
> faith and based on his business judgment.

*Id.* at 292-93 (emphasis added). *See also, Weissman v. Hassett*, 47 B.R. 462, 467 (S.D.N.Y.

1985) (lawsuit was initiated against trustee for libel, intentional infliction of emotional distress

and intentional interference with business relationship for statements in the trustee's report.

Court found that immunity "furthered an important public purpose and should not render him

subject to suit, particularly since he acted pursuant to court order and statutory authorization");

*Walton v. Watts (In the Matter of Swift)*, 185 B.R. 963, 970 (Bankr. N.D. Ga. 1995) (concluding

that "case law has firmly established that, as an arm of the bankruptcy court, the [U.S.] Trustee

merits . . . quasi-judicial immunity.  Accordingly, the law will absolutely immunize the Trustee

for his conduct, unless he has acted in the clear absence of any authority regarding this matter").

In *Weissman* the plaintiffs sought a finding of personal liability of the trustee for more

than $25 million in damages.  *Weissman*, 47 B.R. at 467.  The district court determined that the

trustee was immune from personal liability and noted that "[e]ven a remote prospect of personal

liability of such a magnitude could not help but lessen the vigor with which future reorganization

trustees will pursue their obligations to uncover wrongdoing and report on potential claims held

by a bankrupt estate."  *Id.*  The court also noted that the Bankruptcy Code contained several

safeguards to prevent a trustee's abuse of his authority.  *Id.* (citing 11 U.S.C. § 107(b)(2); 11

U.S.C. § 326; 11 U.S.C. § 324).  As one bankruptcy court has noted, "[s]uits against trustees and

their counsel should not be a substitute for Rule 9011, and indeed such lawsuits would usually

impose an unnecessary and unwarranted burden in cases in which a meritorious Rule 9011

motion could be brought."  *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 564 (Bankr. N.D. Ill.

2000).

With respect to abuse of process, GKH further complains that the Trustee acted beyond

the scope of his authority by continuing to pursue his remaining claims against GKH after Judge

Cook dismissed Adversary Proceeding No. 10-1407.  Judge Cook dismissed Adversary

Proceeding No. 10-1407 on December 16, 2010.  *See* [Doc. No. 1-5, Oral Transcript of Opinion

in Adversary Proceeding 10-1407].  The deadline to appeal ran on December 30, 2010.  The

continued action on which GKH bases its abuse of process claim is the Trustee's and Debtor's

submission to the Chancellor of a memorandum of authorities raising the tolling of the statute of

limitations issue on January 5, 2011, only a week after the deadline to appeal Judge Cook's

ruling on property of the estate.  *See* [Doc. No. 1-8]. That memorandum cited authorities which

involved issues related to the transfer of the 50 acres which GKH contends was abusive. It also

cited authorities on the statute of limitations issue which had not been decided at the time the

memorandum was filed.  The Chancellor rejected the plaintiffs' tolling argument and dismissed

two of the claims against GKH on January 25, 2011.  *See* [Doc. No. 1-14, Chancellor's Order].

The other allegedly abusive pleading is a motion to join an indispensible party which was filed

after the December 16, 2010 Order.  Before the joinder motion was decided, "[o]n February 22,

2011, the Trustee and the Debtor announced in open court that they were going to submit an

order which would provide that the January 25, 2011 Order would be a final dismissal as to all

defendants and all counts. That announcement was memorialized in an order entered on March 4,

2011." [Bankr. Case. No. 08-16378, Doc. No. 1387, p. 8].  The Trustee did not know that his

statute of limitations argument would be rejected by the Chancery Court until January 25, 2011.

Under Tennessee procedural law, he had 30 days to appeal the court's ruling on the statute of

limitations. Tenn. R. App. P. 4(a).  The court finds no filings by the Trustee in furtherance of the

Malpractice Lawsuit alleged to have been made after January 25, 2011. Hence there appears to

have been no use, much less abuse, of process by the Trustee after that date.  Following the

Chancellor's decision in January, the Trustee took less than one month to announce his decision

to dismiss the claims against all defendants and conclude the Malpractice Lawsuit.  Therefore,

the Trustee did not act beyond the scope of his duties in continuing to pursue the Malpractice

Lawsuit for the roughly two months following the December 16, 2010 dismissal of the 50 Acre

Lawsuit.

 The Seventh Circuit noted in *In the Matter of Linton*:

> [The plaintiffs] appear to believe that the fact that the trustee dropped the
> adversary action shows that it was groundless and therefore malicious.  This of
> course is wrong.  Many suits filed in good faith after careful precomplaint
> investigation fizzle long before judgment, whether because further investigation

fails to substantiate the allegations of the complaint or because the defendant presents compelling evidence in his favor that the plaintiff didn't know about or because it turns out that the defendant doesn't have sufficient assets to make the continued prosecution of the suit worthwhile.  As long as there is probable cause to sue, there is no malicious prosecution.

The bankruptcy judge was satisfied that there was probable cause here. . . . Such a chain of transfers was bound to cause a light bulb to flash in a receiver's or bankruptcy trustee's brain.  The trustee might well have been thought derelict not to pursue the claim of fraudulent conveyance to the extent that he did.  The fact that [the trustee] couldn't substantiate his suspicions did not retroactively remove his probable cause to sue.

136 F.3d 544, 546-47 (7th Cir. 1998).  *See also, In re Bernard L. Madoff Investment Securities, LLC*, 440 B.R. at 292-93.

### 3.   Exceptions to Immunity

GKH argues that there are exceptions to the immunity granted to trustees. The court does not find that any of these exceptions apply to the Trustee.

#### (a)   Breach of Fiduciary Duty

GKH argues that the Trustee's conduct in pursuing the Malpractice Lawsuit was an intentional tort. It contends the deliberate and willful filing was without probable cause and was done with malice, and thus, is not protected by the immunity doctrine, citing *Ford Motor Credit Co. v. Weaver,* 680 F.2d 451 (6th Cir. 1982). In that Chapter XI case, a creditor sued a debtor in possession for the conversion of its collateral. The creditor claimed that the debtor had breached his fiduciary duty to safeguard farm equipment belonging to the estate securing the creditor's claim. The debtor denied any liability on the basis that he had been discharged. The Sixth Circuit remanded the case for the trial court to make a specific finding on the issues of the debtor's negligence and conversion in order to determine whether individual liability should be imposed.

As explained by the court in *In re Heinsohn,* there is a difference between claims brought against the trustee by third parties for tort actions and claims brought by creditors of the estate

against the estate fiduciary for a breach of his fiduciary duties. *See* 231 B.R. at 64-66. In *Ford*

*Motor* the Sixth Circuit addressed the second type of claim, a claim for breach of fiduciary duty.

680 F.2d at 461. The court of appeals explained that "[a] trustee in bankruptcy may be liable for

violations of his fiduciary duties. A trustee in bankruptcy can be liable in his official capacity or

individually. . . . A bankruptcy trustee is liable personally only for acts willfully and deliberately

in violation of his fiduciary duties." *Id.* at 461-62. As this court explained in its opinion denying

the Bradley Leave Motion, "GKH is not alleging a breach of fiduciary duty in its capacity as a

creditor of the estate. Such a claim might involve allegations that the Trustee was not adequately

pursuing assets of the estate or was otherwise squandering assets of the estate. Instead, GKH is

arguing the opposite– i.e., that the Trustee was pursuing property that was not property of the

estate and maliciously prosecuting GKH in the process." [Bankr. Case No. 08-16378, Doc. No.

1387, p. 18]. Thus, the *Ford Motor* case's deliberate and willful standard is not applicable here

where GKH is suing the Trustee, not for breach of fiduciary duty, but rather as a third party for

the torts of malicious prosecution and abuse of process brought against it by the Trustee.

    *(b)*    *Ultra Vires Actions*

    GKH does not argue that the immunity doctrine does not exist. Instead, it argues that it

simply does not apply in this situation. It contends that the Trustee's action in prosecuting the

Malpractice Lawsuit Complaint was *ultra vires* or an action outside the scope of the Trustee's

duties under the Bankruptcy Code. As such, GKH contends that the Trustee's actions are not

protected by the doctrine of immunity as explained by *In re Heinsohn*. In that case, the court

noted that absolute immunity generally protects "acts within the ambit of bankruptcy trustee's

official duties." *In re Heinsohn*, 231 B.R. at 63. None of the cases GKH cites involve a finding

of an *ultra vires* act in the context of a trustee's filing a lawsuit to pursue damages for the estate.

They all involve a trustee's seizing or exercising physical control over property that is determined not to belong to the Debtor or to the estate.

The court has already provided analysis distinguishing the cases upon which GKH relies in its prior opinions dismissing the 50 Acre M/P Lawsuit and the Turnover M/P Lawsuit. *See* [Adv. Proc. No. 11-1016, Doc. No. 68 at pp. 14-17, Adv. Proc. No. 11-1110, Doc. No. 25, at pp. 19-21]. In this case, GKH again relies on *Teton Millwork Sales v. Schlossberg* for support of its position that the Trustee was acting outside the scope of his authority. 311 F. App'x 145, 2009 WL 323141 (10th Cir. Feb. 10, 2009). That case involved a receiver authorized by a court order to collect assets of the husband in an acrimonious divorce dispute. The receiver then "seize[d] the assets" of Teton Millwork Sales, a Wyoming company in which the ex-husband was a twenty-five percent shareholder. *Id.* at *147. Teton Millwork Sales brought suit against the receiver in Wyoming, alleging that the receiver exceeded his authority by seizing its assets, as well as by making false representations pertaining to his legal authority. *Id.* In reversing the lower court's granting of the receiver's motion to dismiss the lawsuit, the Tenth Circuit noted that "[i]n order to be immune, the receiver must act within the scope of his authority in carrying out a court order." *Id.* at *150. The appellate court found that the relevant court order only authorized the receiver to obtain the assets of the ex-husband, not assets that belonged to another entity. The court found that the allegations that the receiver seized assets beyond the scope of the court order, without having obtained jurisdiction in Wyoming and through the use of fraudulent and misleading statements, were enough to survive a motion to dismiss. *Id.* at *151. Thus, *Teton Millwork Sales* involved a receiver's physical seizure of property outside the scope of a court order aggravated by allegations of misrepresentation and fraud.

The court finds the current case distinguishable from *Teton Millwork*. Here, the Trustee did not seize anyone's property. He did not mislead anyone about his authority. His role and the Debtor's roles as plaintiffs were set out in the paragraphs of the Malpractice Lawsuit Complaint defining the parties. [Doc. No. 1-1]. The Malpractice Lawsuit sought damages for conflicts and the breach of fiduciary duty. Finally, and perhaps, most importantly the aggrieved party with standing to complain about such an *ultra vires* action in the *Teton Millwork* case was Teton Millwork Sales, the owner of the property which the trustee had wrongfully seized. GKH has never alleged that it owned the real property that the Trustee was trying to recover in the 50 Acre Lawsuit.

GKH also cites *Leonard v. Vrooman* in support of its position.  383 F.2d 556 (9th Cir. 1967).  That case, again, involved an actual physical seizure of property by a trustee.  The bankruptcy estate in *Leonard* included grocery store stock and equipment in a building that had been leased to the bankrupt estate, but was determined to be owned by Leonard. The trustee took control of the building and did not relinquish control until there was a court determination that Leonard was the owner.  *Id.* at 558.  The trustee, along with a constable, took physical possession of the entire building and put new locks on all of the doors.  *Id.* Again, the party suing the trustee was the owner of the property seized by the trustee. The Ninth Circuit concluded that "the trustee initially could have and should have obtained a turnover order directing delivery to the trustee of the personalty which was an asset of the bankrupt estate." *Id.* at 560-61. In this case, the Trustee did what the Ninth Circuit suggested. He brought a lawsuit in which the issue of ownership could be raised if it was relevant.

In another case cited by GKH on this issue, the bankruptcy court noted, "[t]he situation in which trustees have been most commonly found to have acted outside of their authority is in

28

seizing property which is found not to be property of the estate." *Schechter v. State of Illinois, Dep't of Revenue (In re Markos Gurnee Partnership)*, 182 B.R. 211, 217 (Bankr. N.D. Ill. 1995)).

The only other authority GKH cites for the *ultra vires* exception involves a trustee's operation of a business. In *Ziegler v. Pitney*, the Second Circuit addressed a tort claim of negligence against a bankruptcy trustee where the negligent acts of the employees of the trustee, who was operating a bankrupt railroad, resulted in the death of a child.  139 F.2d 595, 596 (2d Cir. 1943).  The Second Circuit affirmed the dismissal of the complaint because the plaintiff was attempting to sue the trustees in their individual capacities when there was no suggestion that the trustees had acted *ultra vires* outside of their authority.  *Id.* Pursuing the Malpractice Lawsuit was not the operation of a business.

In summary, the Trustee's alleged tort did not arise from the operation of a business. His participation in the Malpractice Lawsuit did not involve an intentional deprivation of property owned by GKH. It was a lawsuit brought to recover damages. As explained *supra*, the court finds that the filing of a suit asserting causes of action on behalf of the estate against a third party is an ordinary exercise of a trustee's powers.  It is true that the third party must respond to the complaint and defend itself against the proceeding.  This is true of all litigation.  However, the filing of a complaint that commences a lawsuit, even if unsuccessful, replete with procedures and the provision of judicial due process is very different from an act of conversion brought by the party whose property has been taken. For the reasons stated, the court does not find that this exception applies.

(c)      *Balancing of the Interests of Third Parties*

GKH further asserts that the court should be concerned about the plight of third parties who are harassed by trustees in bankruptcy. Bankruptcy courts do recognize this concern. Rule 9011 is one of the safeguards to protect third parties from such abuse. *In re Kids Creek Partners*, 248 B.R. 554, 564 (Bankr. N.D.Ill. 2000). However, GKH cites no authority in which a court has denied a trustee immunity based on this concern.  The court also questions whether GKH would be the beneficiary of such a balancing test if one existed. GKH is not the typical third party who transacted business with the Debtor and has no idea that the Debtor may be headed to bankruptcy. GKH was the Debtor's counsel and counsel for a significant number of entities in which the Debtor invested. The court has previously found that GKH attempted to take a security interest in thirty-nine of the Debtor's entities six weeks before the involuntary bankruptcy was instituted for its outstanding legal bills which were approximately $385,000. [Bankr. Case No. 08-16378, Doc. No. 1605, Memorandum Denying Motion for Relief from the Automatic Stay]. GKH was the firm that drafted the documents for the December 10, 2008 transaction in which the 50 acres were transferred. It appears to have been the only law firm involved for all of the parties.

The court has found no authority for a balancing test exception to immunity. If there were such a test, it would have to be balanced against the strong policy reasons previously cited by this court as stated in the case law of this Circuit supporting trustee immunity. As an example of how strong the policy is, this Circuit favors dismissal upon immunity grounds, if applicable, as early as possible to avoid the unnecessary expense of discovery.  For example, in *Moore v. City of Harriman*, the Sixth Circuit noted that in its prior decision of *Wells v. Brown*:

> [w]e explained the policy rationale of the qualified immunity doctrine, i.e., the
> "desire to shield public officials from diverting their energies through the forced

> defense of challenges to their actions taken in their governmental capacities," and
> the related requirement that those who are entitled to such immunity "should be
> granted that immunity at the earliest possible stage of the case." This means
> resolving the immunity question prior to discovery.

272 F.3d 769, 778 (6th Cir. 2001) (quoting *Wells*, 891 F.2d 591, 593-94 (6th Cir. 1990)) (citing

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982) (concluding that "bare allegations of

malice should not suffice to subject government officials either to the costs of trial or to the

burdens of broad-reaching discovery")).

Similarly, in this case the court concludes that subjecting the Trustee to discovery in this

proceeding will serve as a distraction during the ongoing main bankruptcy matter and may

preclude him from fully focusing on his duty relating to the administration of the Debtor's estate.

*See, e.g., In the Matter of Linton*, 136 F.3d at 545 (noting that the concern of distracting a trustee

from his statutory obligations "is most acute when suit is brought against the trustee while the

bankruptcy proceeding is still going on. The threat of his being distracted or intimidated is then

very great . . ."). In the absence of any evidence suggesting the Trustee acted with malice

beyond GKH's speculative assertions, the court concludes that dismissal of this action against

the Trustee is appropriate at this early stage of the litigation due to the inherent policy

considerations surrounding trustee immunity from liability, as well as the costs and burden of

launching a defense to litigation.

> (d)    *Waiver of Immunity as a Result of Not Obtaining Leave of this Court to File the*
> *Malpractice Lawsuit*

GKH argues that the Defendants needed to obtain leave of this court in order to be

immune from liability and failed to do so. While not in perhaps the specific form of an order

authorizing the Trustee to pursue the Malpractice Lawsuit, the court notes that the Trustee did

seek approval to employ Banks P.C. as special counsel to pursue actions against GKH and

others. [Bankr. Case No. 08-16378, Doc. No. 749]. No objection was filed to the request and the court approved the application on July 1, 2010. [Bankr. Case No. 08-16378, Doc. No. 806].

Even if the approval of counsel was not specific authority, this court does not find that failure to obtain an order in this case results in a waiver of immunity. A trustee's authority may be derived from statutory authority as well as an order. *See Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F 2d.1149, 1154, n.6 (3d Cir 1989); *Lawrence v. Jahn ( In re Lawrence)*, 219 B.R. 786, 801 (E.D. Tenn. 1998); 11 U.S.C. § 323. This court has addressed GKH's "no order authorizing" argument in several prior opinions (*see* Bankr. Case No. 08-16378, Doc. No. 1387, pp. 14-15; Adv. Proc. No. 11-1016, Doc. No. 68, pp. 17-19; Adv. Proc. No. 11-1110, Doc. No. 25, pp. 22-25), and finds no reason to change its ruling in this case. GKH continues to cite *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875 (B.A.P. 9th Cir. 1995), for the proposition that the Defendants should have sought leave of this court prior to filing the Malpractice Lawsuit. *See* [Doc. No. 21, pp. 37-38].   Rather than repeating this court's full analysis, the court will merely re-summarize its prior explanations of this issue.

In *In re Kashani* the court held that

> a bankruptcy trustee is an officer of the appointing court. As an officer of the court, the trustee is entitled to a form of derivative judicial immunity . . . A trustee is entitled to such immunity only if the trustee is acting within the scope of authority conferred upon the trustee by the appropriate statute(s) or the court.

190 B.R. at 883. A trustee in bankruptcy is given a number of powers relating to his duties under 11 U.S.C. § 704.  One of these powers is the "capacity to sue."  11 U.S.C. § 323(b).  In addition, the estate, created upon the filing of a petition in bankruptcy, includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1). As noted *supra*, the estate also includes, "[a]ny interest in property that the estate acquires after the commencement of the case."  11 U.S.C. § 541(a)(7).  Further, "[c]hoses-in-action . . . are

included within this broad definition." *In re Bailey*, 421 B.R. 841, 849 (Bankr. N.D. Ohio 2009).

*See also*, *Bauer v. Commerce Union Bank, Clarksville, Tennessee*, 859 F.2d 438, 441 (6th Cir.

1988); *Logan v. JKV Real Estate Servs. (In re Bogdan)*, 414 F.3d 507, 512 (4th Cir. 2005); *Polis*

*v. Getaways (In re Polis)*, 217 F.3d 899, 901 (7th Cir. 2000); *In re Lawrence*, 219 B.R. at 801.

In *In re Kashani* the Ninth Circuit Bankruptcy Appellate Panel noted that "courts have

established certain standards and instructions whereby the trustees can protect themselves by

complying with these standards and, thus, gain judicial immunity.  Those instructions include:

the trustee should give notice to the debtor and obtain prior court approval of the proposed act; . .

. ." 190 B.R. at 884.  However, in stating this proposition, the *In re Kashani* court cited cases in

which a trustee sought to carry on business on behalf of the estate.  *See, e.g., Bennett v. Williams*,

892 F.2d 822, 823 (9th Cir. 1989); *Mosser v. Darrow*, 341 U.S. 267, 71 S.Ct. 680 (1951).

Since the statement in *In re Kashani* upon which GKH relies, several courts have

weighed in on the advisability of a trustee seeking court approval prior to taking specific actions

in the course of administering the estate.  For example, in *In re NSCO, Inc.*, the bankruptcy court

addressed whether the tenets of *Mosser* still applied:

> Although *Mosser* continues to be cited, including by the First Circuit and other
> courts, the requirement of a case or controversy, coupled with the ripeness
> doctrine, inform that the Court must not render an advisory opinion or a
> premature one in an effort to insulate a trustee faced with a difficult question. . . .
>
> Moreover, at least one court, *In re Freedlander Inc., The Mortg. People*, 95 B.R.
> 390 (Bankr. E.D. Va. 1989), has questioned whether *Mosser* is still good law in
> light of the evolution of bankruptcy judges from bankruptcy referees to true
> judicial officers and the development of the United States Trustee system.
> Because of these changes in bankruptcy practice, the court refused to advise the
> trustee whether or not to pursue an appeal.  The *Freedlander* court's reasoning
> provides further support for removing a court from deciding issues that are more
> appropriately left to those responsible for administering bankruptcy estates.

427 B.R. 165, 177-78 (Bankr. D. Mass. 2010) (citing *In re Freedlander Inc., The Mortgage People*, 95 B.R. 390, 391-94 (Bankr. E.D. Va. 1989)) (reviewing history of bankruptcy judges and determining that the procedure of trustees asking the court for advice on filing suit is "unwise and perhaps, impermissible today").

Here, by filing the Malpractice Lawsuit, the Trustee sought to pursue a claim under 11 U.S.C. § 323(b) relating to the potential assets of the estate pursuant to 11 U.S.C. § 542(a)(1). The Trustee and his counsel were not engaged in conducting business of the estate that required the use of business judgment that would benefit from a court order authorizing them to proceed with a particular business strategy. Thus, for the reasons stated herein and for the reasons discussed in *In re Freedlander, Inc.* and *In re NSCO*, the court concludes the Trustee had no obligation to seek court approval in advance of the filing of the Malpractice Lawsuit as a prerequisite to this court finding the Trustee acted within the scope of his authority. 95 B.R. at 391-94; 427 B.R. at 177-78.

### B.     Failure to State a Claim for Relief

Based upon its view that the Trustee acted within the scope of his duties and is immune, the court concludes that GKH has failed to demonstrate that its complaint states a *prima facie* case of malicious prosecution or abuse of process against the Trustee. The court has already discussed very similar actions and provided legal analysis on this issue. *See* [Adv. Proc. No. 11-1016, Doc. No. 68, pp. 19-25; Adv. Proc. No. 11-1110, Doc. No. 25, pp. 25-31]. In addition, the legal analysis provided *supra*, regarding the scope of the Trustee's duties also applies to whether the Trustee had probable cause to bring the Malpractice Lawsuit. Therefore, the court will merely briefly summarize its position here.

1.      **Malicious Prosecution**

Under Tennessee law, a claim of malicious prosecution requires a plaintiff to demonstrate

three elements: "(a) that a prior lawsuit or judicial proceeding was brought against the plaintiff

without probable cause, (b) that the prior lawsuit or judicial proceeding was brought against the

plaintiff with malice, and (c) that the prior lawsuit or judicial proceeding terminated in the

plaintiff's favor." *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. Sup. Ct. 2005).  A plaintiff

bears a heavy burden of proof to establish the elements of lack of probable cause and malice.

*Buda v. Cassel Bros., Inc.*, 568 S.W.2d 628, 631 (Tenn. Ct. App. 1978).

In *Buda* the court adopted the description from the Restatement of Torts regarding the

element of probable cause:

> In order to establish the lack of probable cause in instituting a civil proceeding, it
> must appear that the suit was filed primarily for a purpose other than that of
> securing the proper adjudication of the claim in which the proceedings are based.
> If it is established that the party instituting the proceeding reasonably believes in
> the existence of the facts upon which the claim is based and has reasonable belief
> that under those facts the claim may be valid or has reasonable belief in reliance
> upon the advice of counsel, sought in good faith and given after full disclosure of
> all relevant facts within his knowledge and information, then probable cause is
> established.

*Id.* at 631-32 (quoting Restatement of Torts, Second §§ 674, 675).

In *In the Matter of Linton* the court considered the issue of probable cause for a trustee's

actions.  It addressed the plaintiff's contention that the trustee's dismissal of an adversary action

indicated a lack of probable cause: "The bankruptcy judge was satisfied that there was probable

cause here. . . . The fact that [the trustee] couldn't substantiate his suspicions did not

retroactively remove his probable cause to sue." 136 F.3d at 547.  The court then affirmed the

bankruptcy court's decision to deny leave to sue the trustee in state court.

In this action, although the Trustee did not persuade the Chancellor that the Bankruptcy Code tolled the Trustee's statute of limitations, it does not necessarily follow that the Trustee lacked all probable cause for bringing the Malpractice Lawsuit.  *See In the Matter of Linton*, 136 F.3d at 547; *In re Bernard L. Madoff Investment Securities, LLC*, 440 B.R. at 292-93.  For the reasons explained, *supra* at Part IV.A.2. the court finds that probable cause existed for the Trustee's filing of the Malpractice Lawsuit.  Therefore, there is no presumption of malice. GKH's claim for malicious prosecution fails as a matter of law.

Specifically, with respect to the Trustee's pursuit of the claim for breach of fiduciary duty/conflict of interest, GKH has failed to plead that there was a favorable termination. Those claims were dismissed by the Chancellor on the basis that they were barred by the statute of limitations. Such a ruling does not "reflect on the merits of an action." *Parrish*, 172 S.W.3d at 531. As such, it does not satisfy the element of favorable termination. *Id.* at 533.

### 2.    Abuse of Process

Under Tennessee law to establish a claim of abuse of process, a plaintiff must show: "'(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge.'"  *Givens v. Mulliken ex rel. Estate of McElwaney*, 75 S.W.3d 383, 400 (Tenn. Sup. Ct. 2002) (quoting *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. Sup. Ct. 1999)). Further, "[a]buse of process differs from malicious prosecution in that abuse of process lies 'for the improper use of process *after* it has been issued, not for maliciously causing process to issue.'"  *Bell ex rel. Snyder*, 986 S.W.2d at 555.  In addition:

> [t]he test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do.

*Priest v. Union Agency*, 125 S.W.2d 142, 143-44 (Tenn. Sup. Ct. 1939) (quoting 1 AM.JUR.,

*Abuse of Process* § 6).

GKH urges that the continued filing and prosecution of claims even beyond this court's

dismissal of the claims in the 50 Acre Lawsuit demonstrate a *prima facie* case of abuse of

process.  However, the court has already discussed *supra* the legal support for the Trustee's

initial claims alleged in the Malpractice Lawsuit, as well as his legitimate arguments pertaining

to the statute of limitations and his continued prosecution of the Malpractice Lawsuit for another

month following the Chancellor's January 25, 2011 decision.  The Trustee and GKH were

engaged in a legal dispute regarding the claims at issue in the Malpractice Lawsuit, as well as the

timeliness of those claims.  Although the Chancellor dismissed two of the claims against GKH,

and the Trustee ultimately agreed to dismiss the remaining claim, the Trustee's pursuit of a

possible claim of the estate was not without a basis in the law.  *See discussion supra* at IV.A.1-2.

*See also, In the Matter of Linton*, 136 F.3d at 547.  Although GKH suffered through a few weeks

of litigation proceedings following Judge Cook's dismissal of Adversary Proceeding No. 10-

1407, there is no evidence that the Trustee engaged in any conduct not typical of litigation

generally.

The court concludes that GKH has failed to establish a *prima facie* case for its abuse of

process claim against the Trustee. Even taking all of GKH's allegations as true, the court cannot

infer that the plaintiffs' filing of a memorandum of authorities to enable the Chancellor to reach a

decision on the defenses to the motions to dismiss the Malpractice Lawsuit, and the further

actions taken to dismiss the remaining claims were improper or demonstrate an ulterior motive.

GKH has failed to allege that the Trustee engaged in process that would not be proper in the

regular prosecution of a claim of the estate pursuant to 11 U.S.C. § 704(a)(1) and 11 U.S.C. §

323(b).  In this case, the Trustee was taking the procedural steps necessary to be entitled to recoup additional assets for the estate if he was successful.  The court would be discouraging the filing of adversary proceedings by denying the Trustee's motion here when the filing of a lawsuit is precisely the process by which trustees are to seek recovery of assets of the estate.  *See* 11 U.S.C. § 323(b); *In re Lawrence*, 219 B.R. at 801; *In re Bailey*, 421 B.R. at 849.

### C.      Trustee's Arguments Regarding Pre-emption

Having concluded that the Trustee is immune from suit in this action, the court declines to consider the Trustee's further arguments relating to pre-emption.  This court's analysis on that issue is not necessary to the decision here, and, as such, would constitute mere dicta.

### V.      Conclusion

As explained *supra*, the court concludes that the Trustee is entitled to immunity from further prosecution of this adversary proceeding against him.  GKH has further failed to state a *prima facie* case of either malicious prosecution or abuse of process against the Trustee.  The Trustee's motion to dismiss will be GRANTED.

A separate order will enter.

# # #