

**SIGNED this 30th day of March, 2012**

_Shelley D. Rucker_

Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

In re:

STEVE A. McKENZIE                                   No. 08-16378
a/k/a Toby McKenzie                                 Chapter 7
       Debtor;

GRANT, KONVALINKA & HARRISON, P.C.,

       Plaintiff,

v.                                                  Adversary Proceeding
                                                    No. 11-1121

C. KENNETH STILL, RICHARD L. BANKS,
RICHARD BANKS & ASSOC., P.C. and
STEVE A. McKENZIE

       Defendants.

1

## MEMORANDUM

On August 5, 2011, Grant, Konvalinka & Harrison, P.C. ("GKH") filed this lawsuit in the

Circuit Court of Hamilton County, Tennessee against C. Kenneth Still ("Trustee"), Richard L.

Banks ("Banks"), Richard Banks & Assoc., P.C. ("Banks P.C.")[1] and Steve A. McKenzie

("Debtor") alleging malicious prosecution and abuse of process ("Hamilton County M/P

Lawsuit"). The malicious prosecution and abuse of process allegedly occurred in a lawsuit

brought in Bradley County, Tennessee against GKH and others in which malpractice and

conflicts of interest were alleged ("Malpractice Lawsuit"). The Trustee removed the proceeding

to this court, and GKH has filed this motion requesting remand and/or alternatively for

abstention. GKH also requests consolidation of this adversary proceeding with Adversary

Proceeding No. 11-1118 ("Bankruptcy M/P Lawsuit") containing identical factual allegations

and parties which GKH filed in this court also on August 5, 2011.[2]  [Doc. No. 3].[3]

There are other adversary proceedings filed by other parties pursuing malicious

prosecution and abuse of process suits against the Hamilton County Defendants arising from the

Malpractice Lawsuit.[4] In addition, the court has before it multiple motions related to the

---

1   Banks and Banks P.C. will be referred to as the "Banks Defendants." The Trustee, the Banks Defendants and Debtor are collectively referred to as the "Hamilton County Defendants."

2   The court will refer to the Motion for Remand and /or Alternatively For Abstention and/or Consolidation as the "Motion for Remand".

3   All citations to docket numbers pertain to docket entries filed in Adversary Proceeding No. 11-1121, unless otherwise noted.

4 *Nelson E. Bowers, II v. Richard L. Banks, Andrew B. Morgan, Richard Banks & Assoc., P.C., F. Scott LeRoy d/b/a LeRoy & Bickerstaff, F. Scott LeRoy, LeRoy & Bickerstaff PLLC, LeRoy, Hurst & Bickerstaff, PLLC, C. Kenneth Still, Steve A. "Toby" McKenzie*, Adv. Proc. No. 11-1169, Doc. No. 33, pp.7-8 ("Bowers BK M/P Lawsuit"); *John Anderson v. Richard L. Banks, Andrew B. Morgan, Richard Banks & Assoc., P.C., F. Scott LeRoy d/b/a LeRoy & Bickerstaff, F. Scott LeRoy, LeRoy & Bickerstaff PLLC, LeRoy, Hurst & Bickerstaff, PLLC, C. Kenneth Still, Steve*

disposition of this adversary proceeding which are interrelated. First, the Trustee has filed a
Motion for Contempt. [Bankr. Case No. 08-16378, Doc. No. 1395, filed August 12, 2011]. It
seeks the dismissal of this adversary proceeding as a sanction for acts of contempt by GKH in
bringing and maintaining this suit in a state court without leave of this court. Contemporaneously
with the issuance of this memorandum, the court has ruled that GKH was in contempt but denies
that dismissal is the appropriate sanction.

Then there is this Motion for Remand which challenges this court's jurisdiction as to the
Hamilton County Defendants and seeks to terminate this proceeding by remand or abstention. As
discussed in this memorandum, the court finds that the malicious prosecution and abuse of
process claims against the Trustee are core proceedings which have arisen in the case, and it
denies GKH's motion for remand and/or abstention with respect to its claims against the Trustee.
Having found that this court has jurisdiction over the Trustee, the court has before it a motion to
dismiss this proceeding filed by the Trustee. [Doc. No. 5]. By separate memoranda and orders
the court is granting the Trustee's motion to dismiss GKH's claims against the Trustee in both
this adversary proceeding and its twin the Bankruptcy M/P Lawsuit.

Those decisions leave the Banks Defendants as the only party opposing the Motion for
Remand addressed in this Memorandum.  The Trustee, the Banks Defendants and Debtor failed
to file timely responses to the Motion for Remand.  The Trustee filed a response opposing the
Motion for Remand on September 15, 2011 relying primarily on its Motion to Dismiss. [Doc.

---

*A. "Toby" McKenzie*, Adv. Proc. No. 11-1170 ("Anderson BK M/P Lawsuit"). Both of these bankruptcy adversary
proceedings state that there are similar actions instituted in state court against the Debtor and the Banks Defendants
P.C. in their capacity as counsel for the Debtor.  Bowers BK M/P Complaint, Adv. Proc. No. 11-1169, Doc. No.1, p.
3, n.1; Anderson BK M/P Complaint, Adv. Proc. No. 11-1170, Doc. No. 1, p.3, n.1. These two additional malicious
prosecution complaints do not specify in which state court the companion action is pending.

No. 7]. The Banks Defendants filed a response in opposition to the Motion for Remand on November 2, 2011, incorporating the contentions contained in the Trustee's response by reference. [Doc. No. 9]. The Banks Defendants did not address their role as counsel for the Debtor in the response, and the Debtor has not responded at all.

GKH filed a motion to strike the Trustee's and the Banks Defendants' responses as untimely. [Doc. No. 10]. The Trustee opposed the motion to strike. [Doc. No. 12]. In the event the court declined to grant GKH's motion to strike, GKH asked that the court review its reply brief filed with the motion to strike. [Doc. No. 10-1]. The court has reviewed the motion to strike and agrees with the Trustee that his opposition to the remand was evidenced by his removal of the action from state court. The court will thus **DENY** the motion to strike, but will **GRANT** GKH's motion to consider its reply. The court has considered GKH's Reply filed in support of its Motion for Remand. [Doc. No. 10-1].

On February 29, 2012, GKH filed a Supplemental Document seeking to have the court consider additional pleadings that have been filed by the Trustee and the Banks Defendants in the Bowers BK M/P Lawsuit and the Anderson BK M/P Lawsuit. [Doc. No. 13]. In those suits, they allege that the claims and defenses involved in two other adversary proceedings should not be addressed separately. [Adv. Proc. No. 11-1169, Doc. Nos. 44, 45; Adv. Proc. No. 11-1170 Doc. No. 35]. The court has taken those comments into consideration in its decision to abstain.

With respect to the Motion for Remand, the court has reviewed the briefing filed by GKH, the response of the Banks Defendants, the pleadings at issue, and the applicable law and makes findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 set out in the remainder of this memorandum. Based on those findings and analysis, the court concludes that it

4

has non-core jurisdiction over the Debtor, but finds that mandatory abstention applies to GKH's claims against the Debtor.  The court will **GRANT** GKH's motion for mandatory abstention with respect to the Debtor. With respect to the Banks Defendants, the court's jurisdiction over them is core in their role as counsel to the Trustee but non-core as to their role as counsel to the Debtor. Based on the factors considered in Section II.B.2. below, the court will **GRANT** GKH's motion for permissive abstention with respect to GKH's claims against the Banks Defendants. In addition, the court will **GRANT** GKH's request to consolidate the Hamilton County M/P Lawsuit and the Bankruptcy M/P Lawsuit under the adversary proceeding no. 11-1121. Finally, the consolidated proceeding will be remanded to the Circuit Court of Hamilton County, Tennessee.

## I.     Background Facts

The court has summarized facts involving these same parties in several other memoranda filed in both the main bankruptcy case and in various adversary proceedings involving similar allegations.  *See, e.g.,* [Adv. Proc. No. 11-1016, Doc. No. 68; Adv. Proc. No. 11-1110, Doc. No. 25; Bankr. Case No. 08-16378, Doc. Nos. 1354, 1388].  However, for ease of reference, the court will summarize the relevant background facts here.

### A.     Bankruptcy Case

On November 20, 2008, a group of petitioning creditors filed an involuntary petition in bankruptcy against the Debtor in this court.  *See* [Bankr. Case No. 08-16378, Doc. No. 1].  On December 20, 2008, the Debtor filed a Chapter 11 voluntary petition in bankruptcy, [Bankr. Case No. 08-16987, Doc. No. 1].  On January 16, 2009, this court consolidated the two bankruptcy cases. [Bankr. Case No. 08-16378, Doc. No. 33].

The court appointed C. Kenneth Still to be the Chapter 11 trustee for the Debtor on February 20, 2009. [Bankr. Case No. 08-16378, Doc. No. 140].  The court converted the case to a Chapter 7 case on June 14, 2010, and the Trustee continued as the Chapter 7 trustee.  [Bankr. Case No. 08-16378, Doc. No. 789]. On April 29, 2010, Banks filed a motion on behalf of the Debtor to restore his status as a debtor in possession and to remove the Trustee. [Bankr. Case No. 08-16378, Doc. No. 675]. That motion was withdrawn on May17, 2010. [Bankr. Case No. 08-16378, Doc. No. 708].

On May 24, 2010, the Debtor amended Schedule B to include causes of action against GKH and Nelson Bowers, II, among others. [Bankr. Case No. 08-16378, Doc. No. 721]. On June 2, 2010, the Trustee filed an application to employ Banks P.C. as special litigation counsel to pursue the "listed cases [sic] of action against certain individuals and law firms on amendments to Schedule B. The Trustee and Debtor, with Special Counsel, made [sic] pursue these and possibly other causes of action. Any further cases [sic] of action or avoidance actions will be lifted [sic] as they are identified." [Bankr. Case No. 08-16378, Doc. No. 749, Application to Employ Special Litigation Counsel at 2 ("Banks Application")]. The Banks Application also represented that the Banks Defendants did not have any connections with any parties in interest and did not have an interest adverse to the estate that would disqualify them from employment. It specifically represented that Banks was "disinterested."  *Id*. No party objected to the employment, and the court entered an order on July 1, 2010, authorizing the employment of Banks P.C. to act as special litigation counsel to the Trustee to pursue those actions. [Bankr. Case No. 08-16378, Doc. No. 806, Order Authorizing Employment of Special Litigation Counsel at 1]. The Banks Defendants were to be compensated from the estate after approval of the fees

6

based on a 50% contingency fee of the total recovery from any state court actions authorized by

the Trustee. [Bankr. Case No. 08-16378, Doc. No. 749, Banks Application at 2].

### B.    Malpractice Lawsuit

The Trustee and the Debtor, both represented by the Banks Defendants, filed the

Malpractice Lawsuit against GKH and other defendants in the Bradley County Chancery Court.

*See* [Doc. No. 1-3].  This court has reviewed the facts alleged in the Malpractice Lawsuit in

previous opinions.  *See, e.g.,* [Bankr. Case No. 08-16378, Doc. Nos. 1387, 1199; Adv. Proc. 11-

1016, Doc. No. 68].  The Malpractice Lawsuit alleged claims against GKH for breach of

fiduciary duty/conflict of interest and civil conspiracy related to GKH's involvement in

transactions culminating in a "post-petition transfer of … real estate located in Bradley County,

Tennessee." [Bankr. Case No. 08-16378, Doc. No. 1387, p. 5]. The Trustee and the Debtor

described their roles as plaintiffs in the actions as follows:

> Steve A. "Toby" McKenzie ("McKenzie") brings this case in an
> individual capacity for the damages he has sustained after the filing of his
> bankruptcy, which are not part of his bankruptcy estate. He joins with the
> Plaintiff, C. Kenneth Still, Trustee in seeking relief and damages against the
> defendants for all the pre-petition acts of the defendants.

[Doc. No. 1-3, Complaint, Bradley County Chancery Court, No. 2010-CV-251 at 2].

In a parallel action, the Trustee, represented by the Banks Defendants and F. Scott

LeRoy, filed an adversary proceeding in this court (Adv. Proc. No. 10-1407 ("50 Acre

Lawsuit"))[5] seeking the recovery of 50 acres of real property located in Bradley County,

Tennessee that was the subject of the transaction on which the Malpractice Lawsuit was based.

---

[5] Although the Complaint refers to a transfer of sixty acres, the transaction in which the Debtor and Trustee
alleged a transfer involved only fifty acres.

Judge Cook dismissed the 50 Acre Lawsuit, on December 16, 2010. [Adv. Proc. No. 10-1407,

Doc. No. 67]. Following that dismissal, GKH filed an adversary proceeding in this court,

alleging malicious prosecution and abuse of process against the Trustee and his counsel based on

the Trustee's filing of the 50 Acre Lawsuit.  *See* [Adv. No. 11-1016, Doc. No. 1].  The court

dismissed that adversary proceeding against the Trustee and counsel for the Trustee on grounds

of immunity.  *See* [Adv. No. 11-1016, Doc. Nos. 68, 69].

>   As this court has explained:

>   Based on filings with the Tennessee Secretary of State and the Register's Office
>   of Bradley County which were attached to the Trustee's Complaint and on which
>   Judge John C. Cook relied in his dismissal, [Adv. No. 10-1407, Doc. No. 1];
>   [Transcript, Adv. No. 10-1407 at pp. 8-9], the transferor was Cleveland Auto
>   Mall, LLC whose members were the debtor and Mr. Nelson E. Bowers, II.  The
>   transferee company was Exit 20 Auto Mall, LLC, formed December 10, 2008,
>   organized by Wayne Grant, who also served as registered agent with an address at
>   633 Chestnut Street, Chattanooga, TN.  The deed was dated December 10, 2008,
>   approximately twenty days after the involuntary filing.  The deed reflects that it
>   was "Prepared by and [to be returned] to Grant, Konvalinka & Harrison, P.C.,
>   Ninth  Floor - Republic Centre, 633 Chestnut Street, Chattanooga, TN 37450-
>   0900."  *See* [Adv. No. 10-1407, Doc. No 1, p. 47]. The Affidavit of Value on the
>   deed was signed by Nelson E. Bowers, II as Chief Manager and showed a value
>   of $4,000,000. The Trustee's Complaint also had attached a Deed of Trust from
>   Cleveland Auto Mall, LLC to Suntrust Bank dated February 24, 2006, securing
>   approximately $3,800,000 in debt.

[Bankr. Case No. 08-16378, Memorandum Denying Leave of Court to File Action in Circuit

Court of Bradley County, Tennessee, Doc. No. 1387, pp. 5-6].

>   Returning to the history of the Malpractice Lawsuit, this court has previously found in the

Memorandum Denying Leave of Court to File Action in Circuit Court of Hamilton County:

>   In addition to the 50 Acre Lawsuit, on August 6, 2010, the Trustee also
>   joined the Debtor in filing the Malpractice Lawsuit seeking damages for breach of
>   fiduciary duty, conflicts of interest and conspiracy by GKH and Nelson Bowers
>   and the transferee of the 50 acres. Like the 50 Acre Lawsuit, the complaint in

Bradley County alleged that Cleveland Auto Mall, LLC ("CAM") was owned by
Mr. Bowers and the Debtor, that CAM owned 50 acres in Bradley County,
Tennessee, that the property was worth $250,000 an acre, that ten acres had been
transferred to NBR TOY Properties, LLC for $1,002,000 but CAM had not
received payment for the transfer, that the Debtor was suffering severe health
problems in December of 2009, that GKH which had been counsel for the Debtor
and his entities had drafted the documents that transferred those acres to a limited
liability company owned by Mr. Bowers, and that Mr. McKenzie signed a deed as
a member of CAM conveying the 50 acres to Exit 20 Auto Mall, LLC, an entity
owned at least in part by Mr. Bowers. Like the 50 Acre Lawsuit, the only
allegation about the debt of CAM was that it owed $3,000,000 to SunTrust Bank.
There was no allegation specifically addressing the value of the debtor's equity at
the time of the transfer.

The Trustee and his counsel fared no better in the Malpractice Lawsuit
than they had in the 50 Acre Lawsuit. The complaint was met with motions to
dismiss from GKH and Nelson Bowers. GKH first raised the defense of the
statute of limitations. It argued that "if McKenzie suffered a legally cognizable
injury resulting from the events described in the complaint as occurring on
December 10, 2008, clearly McKenzie either knew, or should have known, the
facts sufficient to give notice of the injury at that time since the allegations of the
complaint admit that McKenzie was intimately involved." [Doc. No. 1248-1,
Motion to Dismiss by GKH, at 11]. On November 2, 2010, Mr. Bowers also filed
a motion to dismiss the first two counts based on the failure of the complaint to
state a viable cause of action, the expiration of the statute of limitations, and lack
of any fiduciary duty owed by Mr. Bowers. The motion sought dismissal of the
third count of conspiracy between the defendants based on there having been no
violation of the stay and the plaintiffs' failure to state a viable cause of action with
respect to fraudulent transfer, fraudulent misrepresentation or fraudulent
concealment.  [Doc. No. 1248-2, Motion to Dismiss by Nelson Bowers at 2-3].
On January 4, 2010, GKH joined the Bowers motion to dismiss.

The Trustee and the Debtor responded on January 5, 2010 with a
Memorandum of Authorities and a Motion for Joinder of an Indispensable Party.
The indispensable party was CAM. GKH contends that these January filings,
made after the bankruptcy court's December ruling that the 50 acres was not
property of the estate, give rise to additional damages. GKH contends that the
Trustee failed to acknowledge the "clear preclusive effect" of the bankruptcy
court's ruling in the 50 Acre Lawsuit.  [Doc. No. 1307, Brief in Support of GKH's
Motion for Leave to File Action in Bradley County at 17].  On January 26, 2011,
the Chancellor found that the affidavit filed by the Debtor and the Trustee was
"not sufficient to raise the issue of tolling of the Statute of Limitations under the
case law in Tennessee." [Doc. No. 1248-5, Chancellor's Order, January 25, 2011].

9

The Chancellor granted the motion to dismiss with respect to causes of action related to breaches of fiduciary duty and conflicts of interest based on his finding that those two causes of action had a one year statute of limitations. *Id.*

On February 22, 2011, the Trustee and the Debtor announced in open court that they were going to submit an order which would provide that the January 25, 2011 Order would be a final dismissal as to all defendants and all counts. That announcement was memorialized in an order entered on March 4, 2011. [Doc. No. 1200-2, Ex. B, Chancellor's Agreed Order].

[Bankr. Case No. 08-16378, Doc. No. 1387, pp. 7-8].

### C.   Motion for Leave to File Suit in Bradley County

Following the dismissal of the Malpractice Lawsuit by the Chancellor, GKH filed in the Debtor's main bankruptcy case, a motion for leave to file suit in Bradley County. [Bankr. Case No. 08-16378, Doc. No. 1200, ("Bradley Leave Motion")].  In its motion, GKH sought leave to file claims of malicious prosecution and abuse of process in Bradley County Circuit Court against the "Trustee and his attorneys" for their pursuit of the Malpractice Lawsuit.  In supplemental briefing filed in support of its motion, GKH again clarified that "GKH seeks leave of this Court to file a state court cause of action against C. Kenneth Still ('Still') and his attorneys for malicious prosecution, abuse of process and other related claims/remedies relative to Still and his attorneys' filing and/or continued prosecution, of a meritless case that Still and his attorneys chose to file in Bradley County Chancery Court against GKH and others . . ." [Bankr. Case No. 08-16378, Brief in Support of Bradley Leave Motion, Doc. No. 1307, p. 1].

### D.   Motion for Leave to File a Malicious Prosecution Suit in Hamilton County

GKH also filed a motion in the main bankruptcy case on February 18, 2011, requesting leave to file suit in Hamilton County, Tennessee, in order to allege malicious prosecution and abuse of process against the Trustee and other attorneys acting on behalf of the Trustee in filing

10

an adversary proceeding, Adversary Proceeding 10-1397, in this court. [Bankr. Case No. 08-16378, Doc. No. 1031 ("Hamilton Leave Motion")[6]].

While the Bradley Leave Motion was still pending, this court issued a memorandum and order on July 21, 2011, denying the Hamilton Leave Motion based on the application of the *Barton* Doctrine. [Bankr. Case No. 08-16378, Doc. Nos. 1354, 1355].  Following denial of the Hamilton Leave Motion, on July 22, 2011, GKH filed an adversary proceeding in this court alleging malicious prosecution and abuse of process against the Trustee and his counsel for their pursuit of Adversary Proceeding No. 10-1397 in this court. [Adv. Proc. No. 11-1110, Doc. No. 1].  The defendants in that case filed motions to dismiss on the grounds of immunity and preemption.  [Adv. Proc. No. 11-1110, Doc. Nos. 18, 21].   The court granted the motions to dismiss. [Adv. Proc. No. 11-1110, Doc. Nos. 25, 26].  GKH has appealed that decision to district court. [Adv. Proc. No. 11-1110, Doc. No. 29].

### E.      Institution of Hamilton County M/P Lawsuit

Before this court issued its ruling on the Bradley Leave Motion, on August 5, 2011, at 1:59 p.m., GKH filed the Hamilton County M/P Lawsuit in Hamilton County Circuit Court against the Hamilton County Defendants alleging malicious prosecution and abuse of process for bringing the Malpractice Lawsuit. *See* [Doc. No. 1-2]; *see also,* [Bankr. Case No. 08-16378, Doc. No. 1395].  Also on August 5, 2011, GKH filed the Bankruptcy M/P Lawsuit [Adv. Proc. No. 11-1118, Doc. No. 1].  Only minutes after the filing of GKH's second lawsuit against the Hamilton County Defendants, this court issued its ruling on the Bradley Leave Motion that

---

[6] Adversary Proceeding 10-1397 was a suit brought by the Trustee to require GKH to turnover documents in its possession. It was dismissed by an agreed order.

denied GKH leave to file suit in state court based on the allegations raised in the Hamilton

County M/P Lawsuit. [Bankr. Case No. 08-16378, Doc. Nos. 1387, 1388].   The court's opinion

echoed its earlier opinion denying GKH leave to file suit in Hamilton County based on the

*Barton* Doctrine.  *See id.*

### F.      Motion for Contempt and Motion to Alter or Amend

Following GKH's refusal voluntarily to non-suit the Hamilton County M/P Lawsuit, the

Trustee filed a motion for contempt on August 12, 2011. [Bankr. Case No. 08-16378, Doc. No.

1395].  On August 19, 2011, GKH filed a motion to alter or amend the judgment that asked the

court to reconsider its denial of the Bradley Leave Motion.  [Bankr. Case No. 08-16378, Doc.

No. 1406 ("Motion to Alter or Amend")].  In that motion GKH informed the court for the first

time of its decision to file suit against the Debtor and his counsel in addition to the Trustee and

his counsel. GKH argued that it had determined that the Debtor was a necessary party for its

causes of action against the Trustee; however, GKH provided no specific facts or issues that

would require the addition of the Debtor as a defendant in order to resolve its claims against the

Trustee. GKH also argued that the Trustee's actions were *ultra vires* and that the *Barton* Doctrine

did not apply.  The court denied the Motion to Alter or Amend on the basis that GKH had

provided no new evidence nor had it provided any change in the law that would justify the

court's altering or amending its decision denying leave. [Bankr. Case No. 08-16378, Doc. Nos.

1474, 1475].

With respect to the Motion for Contempt, this court issued a show cause order on

September 13, 2011. [Bankr. Case No. 08-16378, Doc. No. 1440]. The show cause hearing was

held, and contemporaneously with the issuance of this memorandum, the court is issuing its

12

order finding GKH in contempt. The Trustee asked for dismissal of the Hamilton County M/P

Lawsuit as a sanction, but the court is denying that request.

### G.    Motion for Dismissal of Bankruptcy M/P Lawsuit

The Trustee moved for dismissal of the Bankruptcy M/P Lawsuit as well as the Hamilton

County M/P Lawsuit on September 13, 2011. [Adv. Proc. No. 11-1118, Doc. No. 17]; [Doc. No.

5].  The court will dismiss the Trustee from both lawsuits for the reasons stated in separate

memoranda related to those motions.

### H.    Motion to Remand/Abstain or in the Alternative to Consolidate

In this motion GKH has moved for remand and/or abstention and/or consolidation of this

proceeding with the Bankruptcy M/P Lawsuit. [Doc. No. 3].  In the Hamilton County M/P

Lawsuit and its twin, the Bankruptcy M/P Lawsuit, GKH has named as defendants the Debtor

and the Banks Defendants as the Debtor's counsel, in addition to the Trustee and the Banks

Defendants as Trustee's counsel.  GKH argues that the inclusion of the Debtor as a defendant, as

well as GKH's exclusively state law claims leave only the state court as the court with

jurisdiction to hear "the indistinguishably interconnected claims involved in GKH's cause of

action without having to address . . . the irresolvable jurisdictional problems presented by the

removal. . . ." [Doc. No. 10-1, GKH Reply at 3].  GKH has also cited statements made by the

Hamilton County Defendants in the Bowers BK M/P Lawsuit that all of the actions are

interrelated. GKH has also asked for a jury trial and requests that this court abstain from hearing

this matter on both mandatory and permissive abstention grounds. The Trustee and the Banks

Defendants rely on their briefs in support of their Motions to Dismiss in which they state that all

of the matters are core because they relate to the administration of the estate. Further, they argue

13

that the Trustee is immune and the court should dismiss both the Bankruptcy M/P Lawsuit and the Hamilton County M/P Lawsuit. If the court has jurisdiction over the Trustee and if the claims against him are dismissed, the remand issue is moot as to the Trustee. However, the other Hamilton County Defendants have not filed a motion to dismiss at this time. Therefore, the court must still address the issues related to this court's jurisdiction over all of the Hamilton County Defendants and the issue of remand and abstention with respect to the Banks Defendants and the Debtor.

II.      **Analysis**

A.      **Motion for Remand**

In order to determine whether this court has jurisdiction over the Hamilton County Defendants, the court must review the causes of action in the Hamilton County M/P Lawsuit and determine how they relate to the bankruptcy case pending before it. 28 U.S.C. § 1452(a) provides for the removal of actions relating to bankruptcy cases. A party may remove such an action to the district court where the state court action is pending "if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). The court to which such claim or cause of action is removed may remand such claim on any equitable ground. The removing party bears the burden of demonstrating federal court jurisdiction. *See Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). The court will address whether it has jurisdiction over the claims brought by GKH against the parties and then whether there are reasons that the court should abstain.

1.      **No Estoppel to Defendants' Claim of "Core" Jurisdiction.**

As a preliminary matter, GKH argues that the Hamilton County M/P Lawsuit does not

14

contain any "core" dispute as that term is defined in the relevant case law interpreting the

Bankruptcy Code.  GKH argues that, as the Hamilton County Defendants admitted in the

Malpractice Lawsuit that the claims against GKH and the other defendants were "non-core," they

are estopped from claiming that GKH's claims against the Hamilton County Defendants are core.

As a preliminary matter, the court does not find that this allegation by the Hamilton County

Defendants in the Malpractice Lawsuit is determinative. It is the court that determines whether a

proceeding is a core proceeding under subsection (a) of section 157. 28 U.S.C. § 157(b)(3). Prior

contentions of the parties are not determinative. *Alongi v. Alongi, (In re Alongi),* 272 B.R. 156,

158 (Bankr. D. Md. 2001)(party granted remand had previously claimed the action was a core

proceeding). The court has also addressed that the statements of whether the malpractice action

was a "core proceeding" for bankruptcy jurisdiction over the defendants is not a determination of

whether a malicious prosecution action against a trustee and his counsel is a core proceeding. *See*

[Bankr. Case No. 08-16378, Doc. No. 1387, Memorandum Denying Bradley Leave Motion, p.

14 ("The categorization of an action as 'core' or 'non core' for purposes of bankruptcy court

jurisdiction may be determinative of what forum the trustee must use to obtain jurisdiction over

the party from whom he is seeking the recovery. It is not determinative of whether the filing of

that suit is inside or outside the scope of the trustee's duties")].

### 2.    Bases for Jurisdiction

28 U.S.C. § 1334 defines the scope of district court jurisdiction over cases under Title 11.

The statute states in part:

> (a) Except as provided in subsection (b) of this section, the district courts shall
> have original and exclusive jurisdiction of all cases under title 11.
> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of

15

Congress that confers exclusive jurisdiction on a court or courts other than the
district courts, the district courts shall have original but not exclusive jurisdiction
of all civil proceedings arising under title 11, or arising in or related to cases
under title 11.

28 U.S.C. § 1334(a)-(b).

Courts examining 28 U.S.C. § 1334 have concluded that there are four categories of cases

created by the statute:

1.     "cases under title 11",
2.     "proceedings arising under title 11",
3.     "proceedings 'arising in' a case under title 11, and[']
4.     "proceedings 'related to' a case under title 11.[']

*Simmons v. Johnson, Curney & Fields, P.C. (In re Simmons)*, 205 B.R. 834, 837 (Bankr. W.D.

Tex. 1997) (citing 28 U.S.C. §§ 1334(a), (b); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th

Cir. 1987)); *Beneficial Nat'l Bank USA v. Best Receptions Systems, Inc.* (*In re Best Reception

Sys., Inc.*, 220 B.R. 932, 942.  The first category applies to the actual bankruptcy petition.  *In re

Best Reception Sys., Inc.*, 220 B.R. at 942; *In re Simmons*, 205 B.R. at 837 (citing *In re Wood*,

825 F.2d at 92).  With respect to "arising under" proceedings, in *In re Simmons* the bankruptcy

court reviewed the relevant case law and noted that "[t]he few courts that have addressed 'arising

under' have held that the category provides jurisdiction to courts for causes of action that are

created by Title 11." 205 B.R. at 839 n.9.  In *In re Simmons,* the court relied on *In re Wood* and

the Fifth Circuit's treatment of the murkier definition of "arising in" and determined that the

phrase included those proceedings " 'that are not based on any right expressly created by title 11,

but nevertheless, would have no existence outside the bankruptcy.' " *In re Simmons*, 205 B.R. at

839 (quoting *In re Wood*, 825 F.2d at 97); *In re Best Reception Sys., Inc.*, 220 B.R. at 943.  As

the *In re Simmons* court explained it,

16

> [w]hile we cannot–and need not–define the precise parameters of "arise in"
> jurisdiction, we do conclude that matters falling into the category must at the very
> least be of a sort that *could not have occurred but for the bankruptcy*.  For
> example, an ordinary contract made between a debtor and another party during
> the pendency of a bankruptcy could have occurred whether the bankruptcy had
> been filed or not.

205 B.R. at 840 (footnote omitted).

In *Sanders Confectionery Products* the Sixth Circuit explained that "[a] core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *Sanders Confectionary Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 483 (6th Cir. 1992).  Further,

> [i]n non-core proceedings that are "related to" the bankruptcy case, the bankruptcy
> judge may hear the matter and "submit proposed findings of fact and conclusions
> of law to the district court," but without the parties['] consent the bankruptcy court
> may not make a final decision on the matter.

*Id.* (quoting 28 U.S.C. § 157(c)).  The Sixth Circuit also noted that claims will not be considered to "arise under title 11" where the "causes of action are not created or determined by a statutory provision of title 11."  *Id.* at 483 n.4 (citations omitted).  In addition, claims such as "lender liability, common law fraud, securities fraud, and RICO claims against [the defendants] are not ones which 'arise in' a title 11 case because they could arise in cases other than bankruptcy proceedings."  *Id.*

The concept of "related to" jurisdiction in the fourth category of cases as explained in *Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers (In re Dow Corning Corp.)* is broad.  86 F.3d 482 (6th Cir. 1996).  In *In re Dow Corning* the Sixth Circuit explained that it had adopted a test for "related to" jurisdiction first explained by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 988 (3d Cir. 1984) (*overruled on other grounds by Things*

17

*Remembered, Inc. v. Petrarca*, 516 U.S. 124, 116 S.Ct. 494 (1995)). 86 F.3d at 489.  The Sixth

Circuit provided that:

> [a]s stated in [*Pacor, Inc.*], the "usual articulation of the test for determining
> whether a civil proceeding is related to bankruptcy is whether the outcome of that
> proceeding could conceivably have any effect on the estate being administered in
> bankruptcy."  An action is "related to bankruptcy if the outcome could alter the
> debtor's rights, liabilities, options, or freedom of action (either positively or
> negatively) and which in any way impacts upon the handling and administration
> of the bankrupt estate."  A proceeding "need not necessarily be against the debtor
> or against the debtor's property" to satisfy the requirements for "related to"
> jurisdiction.  However, "the mere fact that there may be common issues of fact
> between a civil proceeding and a controversy involving the bankruptcy estate
> does not bring the matter within the scope of section [1334(b)]." . . . Instead,
> "there must be some nexus between the 'related' civil proceeding and the title 11
> case."

*Id.* (internal citations omitted).  In addition, the Sixth Circuit noted that "[o]ur Circuit has held

that Section 1334(b) 'does not require a finding of definite liability of [an] estate as a condition

precedent to holding an action related to a bankruptcy proceeding.'"  *Id.* at 491 (quoting *In re*

*Salem Mortgage Co.*, 783 F.2d 626, 635 (6th Cir. 1986)).  In addition, "[t]he matter need not

directly involve the debtor, as long as it 'could alter the debtor's rights [or] liabilities,' but an

'extremely tenuous connection' will not suffice. " *Sanders Confectionery Products*, 973 F.2d at

482 (quoting *Michigan Employment Sec. Comm'n v. Wolverine Radio Co., Inc.* (*In re Wolverine*

*Radio Co. Inc.*), 930 F.2d 1132, 1142 (6th Cir. 1991)).

28 U.S.C. § 157 provides for district court referral of cases under Title 11 to the

bankruptcy courts.  The statute states:

> (a) Each district court may provide that any or all cases under title 11 and
> any or all proceedings arising under title 11 or arising in or related to a case under
> title 11 shall be referred to the bankruptcy judges for the district.
> (b)(1) Bankruptcy judges may hear and determine all cases under title 11
> and all core proceedings arising under title 11, or arising in a case under title 11,

18

referred under subsection (a) of this section. . . .

28 U.S.C. § 157(a) and (b)(1).

Section 157(b)(2) provides guidance on matters that are considered core proceedings.
With respect to the issues in this case, the statute provides that: "core proceedings include, but
are not limited to– (A) matters concerning the administration of the estate;. . . . and (O) other
proceedings affecting the liquidation of the assets of the estate . . . ." 28 U.S.C. § 157(b)(2)(A)
and (O).  It further states that:

> [t]he bankruptcy judge shall determine, on the judge's own motion or on timely
> motion of a party, whether a proceeding is a core proceeding under this subsection
> or is a proceeding that is otherwise related to a case under title 11.  A
> determination that a proceeding is not a core proceeding shall not be made solely
> on the basis that its resolution may be affected by State law.

28 U.S.C. § 157(b)(3).

The district court for the Eastern District of Tennessee has referred cases under 28 U.S.C.
§ 1334 to bankruptcy courts.  *See Kirk v. Hendon (In re Heinsohn)*, 231 B.R. 48, 56 (Bankr. E.D.
Tenn. 1999). In *In re Heinsohn* the bankruptcy court explained the difference between the scope
of district court jurisdiction over bankruptcy matters in 28 U.S.C. § 1334 and the core/non-core
distinction made in 28 U.S.C. § 157(b):

> A statement designating a proceeding as core or non-core does not fall within this
> category of information because a proceeding's core/non-core status only
> becomes pertinent after it has been established that the proceeding falls within the
> district court's bankruptcy jurisdiction.  "If a district court has bankruptcy
> jurisdiction over a case, 28 U.S.C. § 157(a) allows the court to refer the case to
> the bankruptcy court."  Upon such referral, § 157(b) "provides guidance as to
> what matters within § 1334 jurisdiction may be heard and determined by
> bankruptcy judges, who are not Article III judges." . . . Therefore, while the
> core/non-core statement is relevant in ascertaining the extent of the bankruptcy
> court's authority . . . ; it has no bearing on whether the district court has
> jurisdiction.

*In re Heinsohn*, 231 B.R. at 53 (quoting *Sanders Confectionery Prod., Inc.*, 973 F.2d at 482).

It is possible for an action to "encompass both core and non-core issues." *In re Best Reception Sys., Inc.*, 220 B.R. at 945.  In *In re Best Reception Sys., Inc.,* the court further explained that "[e]ach claim must, on its own, satisfy the requirements of § 157(b)." *Id.* at 946. A court "must examine each cause of action separately to determine if it is core or non-core." *Id.*

GKH has brought two causes of action -- malicious prosecution and abuse of process -- against four defendants, two of whom have been sued in two capacities. With respect to the causes of action, they are both tort actions based on state law arising from the Malpractice Lawsuit. One cause of action is based on the initiation of the Malpractice Lawsuit while the other cause of action is based on the continued prosecution of that lawsuit after certain rulings were made by this court. Since both causes of action are related to the Hamilton County Defendants' actions in the one suit, the court does not see that separate analysis of each cause of action is necessary; however, the court does believe a separate analysis is required for each defendant, and, with respect to the Banks Defendants, for each of the roles they played in the Malpractice Lawsuit. The court will examine whether GKH's claims against each defendant are core or non-core. If the causes of action are non-core, then the court will also consider whether those causes of action are "related to" the bankruptcy case.

    *(a)     Causes of Action Against the Trustee*

The bankruptcy court in *In re Heinsohn* examined whether a claim of malicious prosecution against a bankruptcy trustee is a core or non-core matter.  231 B.R. at 55.  With respect to a bankruptcy court's jurisdiction, the court explained:

20

> . . . the district court's and bankruptcy court's subject matter jurisdiction is
> coextensive with respect to core proceedings.  However, absent consent of the
> parties, a bankruptcy court does not have subject matter jurisdiction over non-
> core, *i.e.*, "related," proceedings although such proceedings are still within a
> district court's jurisdiction.

*Id.* at 56 (citation omitted).  The bankruptcy court determines whether a matter is core or non-

core pursuant to 28 U.S.C. § 157(b)(3), and it must "look at both the form and the substance of

the proceeding."  *Id.*  Further,

> [a]s a general rule, 'a core proceeding either invokes a substantive right created by
> federal bankruptcy law or one which could not exist outside of the bankruptcy.'
> The fact that the claim raises issues of state rather than federal law does not by
> itself determine that it is not a core proceeding.

*Id.* at 56-57 (quoting *Sanders*, 973 F.2d at 483 and citing *In re Hildebrand*, 205 B.R. 278, 283

(Bankr. D. Colo. 1997)).  The bankruptcy court concluded that the malicious prosecution action

was a core proceeding.

    The plaintiff in *In re Heinsohn* raised very similar arguments to the arguments GKH

makes in the Motion for Remand.  For example, the plaintiff claimed that his malicious

prosecution case against the trustee had no relationship with the closed bankruptcy estate and

was a claim that could exist outside of bankruptcy.  231 B.R. at 57.  After reviewing case law

analyzing similar claims against a bankruptcy trustee, the court in *In re Heinsohn* determined

that the malicious prosecution action against the trustee involved the administration of the estate,

a core matter under 28 U.S.C. § 157.  The court especially relied on the decision of the Ninth

Circuit Bankruptcy Appellate Panel in *Honigman, Miller, Schwartz & Cohn v. Weitzman (In re

DeLorean Motor Co.)*, 155 B.R. 521 (B.A.P. 9th Cir. 1993).  It noted that:

> [i]t was not happenstance that the complained of events took place while the
> defendant was a bankruptcy trustee. . . . Thus, a trustee who makes a criminal
> referral is simply carrying out his administrative duties, no different than the

21

trustee in *DeLorean* who filed the fraudulent conveyance action or the trustee in
*Harris Pine Mills* who sold estate property.  Although the plaintiff's causes of
action for malicious prosecution and defamation would exist outside bankruptcy,
they would not have arisen but for the defendant's obligations and conduct as a
trustee.  Accordingly, this is a core proceeding.

*Id.* at 59 (citing *In re DeLorean Motor Co.*, 155 B.R. 521; *Maitland v. Mitchell (In re Harris*

*Pine Mills*, 44 F.3d 1431, 1436 (9th Cir. 1995)).

> The district court affirmed the bankruptcy court's decision, noting:
>
> The Court agrees the action in this case was a core proceeding.  From all
> indications, Defendant made the referral in this case in the course of his duties as
> trustee of the relevant bankruptcy estate.  The Court realizes Plaintiff challenges
> this assertion, however, . . . the Court finds this argument without merit.  Had
> there been no bankruptcy proceeding, the referral which Plaintiff contends was
> maliciously instituted, would not have taken place.  The referral concerned
> *bankruptcy* fraud and was made pursuant to 18 U.S.C. § 3057 concerning
> *bankruptcy* investigations.  Thus the referral, on which Plaintiff's case turns,
> arises under the bankruptcy laws and would not exist independent of these laws.
> Accordingly, the proceeding is core.

*Kirk v. Hendon (In re Heinsohn)*, 247 B.R. 237, 244 (E.D. Tenn. 2000)(footnote

omitted)(emphasis in original).

This court has already explained in its Memorandum Denying the Bradley Leave Motion

why GKH's proposed malicious prosecution and abuse of process claims against the Trustee

should remain in this court.  *See* [Bankr. Case No. 08-16378, Doc. No. 1387].  The court further

explained how the actions of the Trustee in filing the Malpractice Lawsuit were within the scope

of his duties.  *See id.* at pp. 13-17.  The court also addressed at length how the Trustee's actions

in pursuing an adversary proceeding in this court based on the same operative facts as the

Malpractice Lawsuit were within the scope of his duties in its memorandum accompanying the

order of dismissal of Adversary Proceeding No. 11-1016. [Adv. Proc. No. 11-1016, Doc. No. 68,

pp. 7-19].  The court declines to repeat this lengthy analysis here, but based on the reasoning

discussed in those opinions, and the authority of *In re Heinsohn* and *In re DeLorean*, the court

concludes that the Trustee's actions in filing the Malpractice Lawsuit were within the scope of

his duties, and therefore, any malicious prosecution and abuse of process claims against him are

core proceedings.  *In re Heinsohn*, 231 B.R. at 59; *In re Heinsohn*, 247 B.R. at 244; *In re

DeLorean Motor Co.*, 155 B.R. 521.

> As noted by this court in its prior opinion on this issue:

> 11 U.S.C. § 704 requires the trustee to "collect and reduce to money the property
> of the estate for which such trustee serves, and close such estate as expeditiously
> as is compatible with the best interests of parties in interest."  11 U.S.C. §
> 704(a)(1).  The trustee must further "investigate the financial affairs of the
> debtor," as well as "if a purpose would be served, examine proofs of claims and
> object to the allowance of any claim that is improper."  11 U.S.C. § 704(a)(4)-(5).

[Adv. Proc. No. 11-1016, Doc. No. 68, p. 8 (quoting 11 U.S.C. § 704)].  The court concludes that

the Trustee was attempting to collect assets of the estate and to investigate the financial affairs of

the Debtor when he filed the Malpractice Lawsuit.  Thus, any malicious prosecution or abuse of

process claim involves the administration of the bankruptcy estate and is a core proceeding.  *See

In re Heinsohn*, 231 B.R. at 55.

    *(b)*    *Banks and Banks P.C. as counsel for the Trustee*

As the court also explained in its prior opinions, immunity analysis for a trustee's actions

also applies to counsel for the trustee. *See, e.g.*, [Adv. Proc. 11-1016, Doc. No. 68, pp. 13-14]; *In

re Heinsohn*, 231 B.R. at 63; *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 322 (6th

Cir. 2006).  The Banks Defendants filed a response adopting the Trustee's Response to the

Motion for Remand. [Doc. No. 9]. Therefore, for the same reasons that the court has concluded

23

that GKH's claims against Trustee are core matters, it finds that the claims against the Banks

Defendants, in their capacity as counsel for the Trustee, are also core proceedings.

>    (c)    *Jurisdiction over the Debtor*

In addition to the Trustee and his counsel, GKH has also sued the Debtor. The court must

now determine what jurisdiction it has, if any, over claims of malicious prosecution and abuse of

process arising from the Debtor's pursuit of "damages he has sustained after the filing of his

bankruptcy, **which are not part of his bankruptcy estate.**" [Doc. No. 1-1, Complaint, Bradley

County Chancery Court, No. 2010-CV-251 at 2 (emphasis added)].

As stated *supra*, 28 U.S.C. § 1334(a) and (b) define the scope of the bankruptcy court's

jurisdiction.  28 U.S.C. § 1334(a)-(b).  The Sixth Circuit has explained that proceedings are

"core" for bankruptcy jurisdictional purposes where they meet the "arising under title 11" or

"arising in a case under title 11" language of 28 U.S.C. § 1334(a)-(b).  *Amedisys, Inc. v. Nat'l*

*Century Finan. Enterps., Inc. (In re National Century Finan. Enterps., Inc.)*, 423 F.3d 567, 574

(6th Cir. 2005).  Cases "related to" a case under title 11 are non-core proceedings.  *Id.* (citing *In re*

*Combustion Engineering, Inc.*, 391 F.3d 190, 225-26 (3d Cir. 2004)).  This court does not have

any jurisdiction over matters that are not covered in 28 U.S.C. § 1334(a)-(b).  *See In re Best*

*Reception Sys., Inc.*, 220 B.R. at 949.

As noted *supra*, under *In re Heinsohn*, GKH's claims of abuse of process and malicious

prosecution against the Trustee and the Banks Defendants for actions taken as counsel for the

Trustee are core proceedings.  This core jurisdiction is based on the rulings that have found that

actions against a trustee for malicious prosecution and abuse of process affect the administration

of the bankruptcy case. 28 U.S.C. § 157(b)(2)(A). These courts have noted that they have core

jurisdiction because actions against a trustee call into question the manner in which a trustee and his counsel have carried out their duties. These types of actions raise the concern that subjecting a trustee to liability will have a chilling effect on a trustee's willingness to pursue actions in that particular case and on trustees' willingness to pursue actions generally. *See In re Heinsohn*, 231 B.R. at 59; *In re Heinsohn*, 247 B.R. at 245; *Traina v. Blanchard*, No. 97-0348, 1998 WL 483485, at \*2 (E.D. La. Aug. 13, 1998); *Picard v. Chais, et al. (In re Bernard L. Madoff Investment Securities, LLC)*, 440 B.R. 282, 286 (Bankr. S.D.N.Y. 2010); *Weissman v. Hassett*, 47 B.R. 462, 467 (S.D.N.Y. 1985). In these cases, the courts have read 28 U.S.C. § 157(b)(2)(A) broadly and have found core jurisdiction even where a determination of the proceeding in question will not create either a liability or a recovery for the estate. For example, in *In re Heinsohn*, the estate had already been closed when the malicious prosecution case was brought and the plaintiff was seeking only damages from the trustee individually. 247 B.R. at 242. This court must determine whether the core category of administration of the estate is broad enough to support core jurisdiction for the Debtor's pursuit of his damages arising post petition under the facts of this case.

In determining whether the cause of action against the Debtor should be considered to be a core proceeding, GKH relies on the Debtor's allegation in the Malpractice Lawsuit Complaint that he is pursuing damages that would not be property of the estate.  In addition, the court notes that only the Debtor pursued punitive damages for his benefit in the Malpractice Lawsuit complaint. Based on those allegations, GKH argues that the court cannot find that core jurisdiction exists over the claims against the Debtor. The Debtor has not responded to the Motion for Remand, so he has provided no basis for the court's finding that his actions fell

25

within one of the core proceedings listed in 11 U.S.C. § 157(b)(2). At the time he brought the

Malpractice Lawsuit, the Debtor was not the representative of the estate, although he had tried to

regain his status as a debtor in possession only a few months before the Malpractice Lawsuit was

filed. The court sees no basis for expanding core jurisdiction through an even broader reading of

administration of the estate to include a party who alleges he is proceeding on his own behalf and

who is no longer responsible for the administration of the estate. Based on the Debtor's

allegation in the Malpractice Lawsuit Complaint and the Debtor's failure to respond showing

how his involvement in the Malpractice Lawsuit related to administration of the estate, the court

agrees with GKH. It finds that the causes of action against the Debtor are not core proceedings.

The court must now determine whether those same causes of action are "related to" the

bankruptcy case. The test as expressed in *Dow Corning* is whether "the outcome of that

proceeding could conceivably have any effect on the estate being administered in bankruptcy."

*In re Dow Corning*, 86 F.3d at 489.  GKH's claims are against a debtor, although that fact alone

is not enough for a finding of "related to" jurisdiction.  GKH has cited several cases that hold

that a bankruptcy court does not have jurisdiction over the litigation between a debtor and third

parties that will benefit only the debtor.  In *Family Medical Assoc., LLC v. Alongi*, the

bankruptcy court addressed the remand of a civil action requesting an injunction to enforce the

restrictive covenants of an employment agreement between the plaintiff employer and the

employee debtor.  272 B.R. 156, 158 (Bankr. D. Md. 2001).  The court concluded that the action

was not "related to" the debtor's bankruptcy action as the actions pertaining to the plaintiff's

claim occurred post-petition and were not property of the estate.  *Id.* at 160.  The court granted

the plaintiff's motion for remand, noting that: "whether or not [the plaintiff] successfully enforces

26

the covenants at issue, such relief would not affect compliance with a plan of reorganization, nor would it change the character or amount of any claim against [the debtor's] bankruptcy estate." *Id.*

In *In re Johnson*, another case cited by GKH, the bankruptcy court addressed "related to" jurisdiction over a post-petition loan that a creditor made to the debtors and a refusal of the debtors to surrender title to the vehicle serving as collateral following satisfaction of another creditor's lien.  No. 04-82274C-7D, 2006 WL 2462823, at *1 (Bankr. M.D.N.C. Aug. 23, 2006). The court determined it had no jurisdiction over the plaintiff's claims and denied its motion to reopen the debtors' bankruptcy case.  *Id.* at *2.  The court found that the loan and alleged wrongdoing occurred post-petition and could not give rise to a claim against the estate or affect its administration.  *Id.* at *1.

Applying the "claim against the estate" analysis, the connection between GKH's claims and the bankruptcy estate is not strong. In this case, GKH argues that a judgment in its favor would not affect its claim against the estate. It would be a post petition claim against a debtor who has waived his discharge. There is no plan of reorganization since this is a Chapter 7 liquidation.  By the same token, if GKH is not successful and a court were to find that the Debtor had probable cause to pursue claims that are not property of the estate, GKH's loss would not benefit the estate.

Two other cases cited by GKH focus on the interrelation of the state court issues with the bankruptcy case. In *Delphi Automotive Sys., LLC v. Segway, Inc.*, the court granted a motion to remand, concluding that state law breach of contract claims were only "indirectly related to [debtor's] bankruptcy case" and that state law claims predominated over bankruptcy issues. 519

27

F.Supp.2d 662, 670 (E.D. Mich. 2007). In *Rhiel v. Central Mortgage Co. (In re Kebe)*, the bankruptcy court determined that it lacked jurisdiction over a third-party complaint brought by a non-debtor, who jointly owned a house with the debtor, against a mortgage closing company for negligence in the manner in which the mortgage company notarized the mortgage. 444 B.R. 871 (Bankr. S.D. Ohio 2011). The negligence allegedly gave the trustee grounds to avoid the mortgage in the debtor's bankruptcy case.  In *In re Kebe* the bankruptcy court found that the trustee's ability to avoid the mortgage was "in no way dependent on, or intertwined with" the non-debtor's third-party negligence complaint against the mortgage closing company.  444 B.R. at 877.

The connection for jurisdictional purposes is much stronger when the issue is whether the bankruptcy case is intertwined with the state law issues. An analysis of the probable cause elements of malicious prosecution and abuse of process will require an analysis of the bankruptcy law on property of the estate as it relates to the preclusive effect of the decision in the 50 Acre Lawsuit and as it relates to ownership of the causes of action in the Malpractice Lawsuit. The statute of limitations defenses raised in the Malpractice Lawsuit complaint are also based on the tolling effect of a bankruptcy provision, 11 U.S.C. § 108, and the Debtor's incapacity due to illness, which was an issue raised in the bankruptcy case with respect to the appointment of a Trustee.  The facts which the Debtor alleged as the basis of his causes of action in the Malpractice Complaint are the same as those alleged by the Trustee. Bankruptcy law and the specific rulings of the bankruptcy court in this case will be central to the prosecution and defense of the malicious prosecution and abuse of process causes of action. In addition, GKH has argued in its Motion to Alter or Amend that the Debtor is an indispensible party to its claims against the

28

Trustee. It repeats this contention in its brief in support of the Motion for Remand. [Doc. No. 3-1, p. 11].  It cited the other defendant's contentions that the matters should all be heard together in its Supplement to its Supplemental Response. [Doc. No. 13, pp. 1-2]. Although GKH did not specify why the Debtor is indispensible in either pleading, GKH's position that the Debtor is an indispensible party to its claims against the Trustee is inconsistent with its current position that its claims against the Debtor can have no conceivable effect on the Trustee's liability and administration of the estate.

In another case cited by GKH, *Franklin Life Ins. Co. v. Rousselle (In re Rousselle)*, the bankruptcy court addressed a plaintiff company's claims for injunctive relief based on tortious interference by the debtor with business relationships under state law.  259 B.R. 409 (Bankr. M.D. Fla. 2001).  The alleged wrongful tortious actions occurred post-petition.  The court analogized the claims of the plaintiff to a car accident occurring post-petition that can have no possible effect on the administration of the estate.  *Id.* at 412.  The court found that it had no jurisdiction over the plaintiff's claims.  *Id.* at 413.  In explaining its conclusion, it noted:

> [a]sking the Court to enjoin future behavior and to award damages in the instant case is no different than asking the Court to enjoin a Chapter 7 debtor from driving negligently in the future or asking the Court to award damages stemming from a car accident a debtor caused post-petition.  In both cases, there is no possibility that the bankruptcy estate might be affected, because the unfettered administration of the estate by a Chapter 7 trustee is not affected and because no valid claim against the Chapter 7 estate could possibly be grounded on the postpetition behavior.

*Id.* at 412.

GKH argues in its response that the Debtor's involvement in this case is like the debtors' involvement in the *In re Rousselle* case. However, the court cannot adopt GKH's view that this

29

court has no more interest in GKH's claims and this estate's involvement in that litigation than it would have in the Debtor's involvement in a postpetition fender bender. Here, the claims alleged in the original Malpractice Lawsuit pertain to allegations of wrongdoing arising from the Debtor's involvement in and allegations of the other parties' desire to remove the 50 acres project from the reach of the Debtor's bankruptcy. [Doc. No. 1-3, Malpractice Complaint, ¶¶ 11-27].  The alleged actions were taken by GKH, the Debtor's former counsel and a significant creditor in the case. Those actions were taken in the gap period between the involuntary petition and the Debtor's becoming the debtor in possession in his own voluntary Chapter 11 bankruptcy. In *In re Alongi*, the plaintiff's claims had nothing to do with the debtor's conduct at a time when he was in possession and in control of the estate, but rather related to his postpetition employment agreement which was found not to be property of the estate.

Finally, the context in which the Malpractice Lawsuit arose is more closely connected to the administration of a bankruptcy case than the facts in the cases cited by GKH. The malicious prosecution and abuse of process arose in response to a case in which the Debtor was a co-plaintiff with the Trustee where the lines of ownership of the malpractice claims and the standing to bring them were blurry.[7] *Headrick v. Bradley County Memorial Hospital*, 208 S.W.3d 395 (Tenn. Ct. App. 2006). In the context of this case and with respect to an interpretation of whether GKH's claim may have an effect on the "unfettered administration of the estate by a Chapter 7 trustee," a broad reading of administration of the estate is more appropriate in the context of

---

[7] The court has been given no other explanation other than the statement in the Malpractice Lawsuit Complaint for the reason that the Trustee and the Debtor were both plaintiffs in the Malpractice Lawsuit. The Chancellor in the Malpractice Lawsuit never made a determination of what damages belonged to which party because she determined that the actions for malpractice had expired regardless of which party had the right to pursue them.

"related to" jurisdiction. *In re Rousselle*, 259 B.R. at 412.

The importance of bankruptcy law and events in the bankruptcy case to the Hamilton County M/P Lawsuit and the relationship of the Malpractice Lawsuit to the administration of the estate are connections to the bankruptcy case that make the Hamilton County M/P Lawsuit related to the Debtor's bankruptcy case. This court finds that it has noncore jurisdiction over GKH's claims against the Debtor.

> (d)     *Banks Defendants as Counsel for the Debtor or Separately Liable*

Based on the findings with respect to the court's jurisdiction over the Trustee and the Debtor, the court finds that it has core jurisdiction over the Banks Defendants in one capacity and noncore jurisdiction in the other. GKH has treated the Banks Defendants as a third defendant in the Hamilton County M/P Lawsuit and is seeking damages based on joint or several liability. The parties have not directed this court's attention to cases that directly address the factual situation present here – *i.e.*, jurisdiction over malicious prosecution claims against a debtor and a trustee and their joint counsel arising from a lawsuit based on state law claims brought in one lawsuit by that debtor and trustee.

The court has located only one case that has similarly unusual circumstances that culminate in a malicious prosecution case against the debtors' counsel. The issue addressed in that case is whether the court has jurisdiction over the malicious prosecution case removed to the bankruptcy court by the debtors' counsel.  The debtors' counsel had even served in a dual role for the debtors and the trustee at one point in the underlying case.  In that unpublished California decision, the district court addressed the appeal of a bankruptcy court's order remanding a removed action to state court.  *See Snider v. Sherman*, No. CV-F-03-6605, 2007 WL 1174441

(E.D. Cal. Apr. 19, 2007). Although the facts are not identical to the situation at hand, there are some similarities, and the court finds that a review of the district court's decision is useful here.

In *Snider* the debtors filed a chapter 7 bankruptcy petition and identified an investment group as creditors on their bankruptcy schedules. 2007 WL 1174441 at *1. The schedules did not disclose that the debtors maintained a claim against the same investment group. A trustee was appointed, and the debtors retained a new attorney. *Id.* The debtors, through their counsel, filed an adversary proceeding in bankruptcy court against the investment group and a bank claiming that the adversary proceeding related to property of the estate of the debtors and potential assets of the debtors. However, the complaint did not name the trustee as a plaintiff. The debtors' claims in the adversary included, among other claims, specific performance, quiet title, and damages for an alleged failure to honor contractual obligations under which the investment group had "primary liability for a $100,000 loan secured by a deed of trust on the [debtors'] residence." *Id.*

The parties then entered into a stipulation of dismissal of the adversary proceeding in the bankruptcy court. *Id.* The stipulation stated: "each of the parties to the pending action and the [t]rustee either desire or have no objection to dismissal of the within action so that it can be refiled and prosecuted in the Superior Court for the County of San Joaquin, State of California." *Id.* at *2. Although the stipulation was dated in 1992, the parties did not file it with the bankruptcy court until January of 1995.

In March of 1992, the counsel for the debtors, *acting on behalf of the debtors and the trustee*, filed a complaint in the San Joaquin Superior Court. *Id.* at *3. The complaint sought declaratory relief against the investment group and the bank, as well as alleged claims for breach

32

of contract, breach of the implied covenant of good faith and fair dealing, fraud, deceit, and

conspiracy to defraud. *Id.* at *6.

In June of 1993, the parties filed a stipulation of dismissal of the trustee.  The trustee had

retained new counsel by that point in the case.  Although the stipulation indicated the trustee's

lack of any further interest in the case, the trustee never filed a motion in the bankruptcy court to

abandon his interest in the state court case and did not obtain an order from the bankruptcy court

disclaiming his interest. *Id.* at *7.  The debtors filed an amended complaint in September of

1993 and a second amended complaint in June of 1994.  The trustee filed a final report and

account in the bankruptcy court in May of 1994.  In March of 1995, the bankruptcy court closed

the bankruptcy case. *Id.*  In February of 1997, the state court judge granted the investment

group's and the bank's motion for non-suit.  The state court relied on the debtors' failure to list

their claim against the investment group on their bankruptcy schedules as a reason to justify the

imposition of judicial estoppel. *Id.* at *8-10.  The state court of appeals affirmed that superior

court judgment. *Id.* at *10.

Following the dismissal of the state court lawsuit, in November of 1999, the investment

group defendants filed a complaint alleging malicious prosecution against the debtors and their

attorney, as well as Does 1-50 in state court. *Snider*, 2007 WL 1174441 at *10.  The state court

lawsuit alleged that the debtors and their attorney acted without probable cause when the debtors

did not truthfully complete their bankruptcy schedules. *Id.* at *11.

The bankruptcy court granted the debtors' attorney's motion to reopen the bankruptcy

case, and the debtors' attorney removed the malicious prosecution action from state court to the

bankruptcy court. *Id.* at *12.  The notice of removal alleged that the bankruptcy court had

33

jurisdiction because the matter was a core proceeding involving administration of the estate and affected liquidation of assets of the estate.  The notice also alleged that the action involved "a suit against a legal representative of the Chapter 7 Trustee regarding post-petition representation of the Trustee, filed without leave of the bankruptcy court. . ."  *Id.* at *12.  The debtors' attorney then filed a motion to dismiss the malicious prosecution action, and the investment group filed a motion to remand.  *Id.* at *13.  The bankruptcy court issued a decision striking the motion to dismiss and granting the motion to remand.  The bankruptcy court remanded the case for lack of jurisdiction.  *Id.*

The bankruptcy court found that the investment group did not seek to challenge any action taken by the trustee or by the debtors' counsel acting as counsel for the trustee, but instead sought relief solely against the debtors and their counsel.  The bankruptcy court concluded that the debtors had no standing to pursue the superior court case as an asset of the estate because the trustee had never formally abandoned his interest.  The court further found that the debtors were thus not administering an asset of the estate because they had no standing.  *Id.* at *13-14.

On appeal of the order of remand and striking of the motion to dismiss, the district court reversed the bankruptcy court's decision on the issue of remand and remanded the case to the bankruptcy court.  *Id.* at *45.  The court reviewed at length the preemption of certain state law claims pursuant to *MSR Exploration v. Meridian Oil*, 74 F.3d 910, 913 (9th Cir. 1996).  *Id.* at *18-32. The court concluded that preemption did apply to the malicious prosecution complaints because the actions were in pursuit of property of the estate.  *Snider*, 2007 WL 1174441 at *31.

After reviewing the issue of preemption, the district court also reviewed whether the bankruptcy court had jurisdiction over the malicious prosecution action.  The court found that

34

core jurisdiction existed. *Snider*, 2007 WL 1174441 at *32-33.  It first noted that "'[r]esolution turning on the interpretation of a prior court order, which in turn interpreted and applied a specific provision of Title 11 . . . is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O) . . .'" *Id.* at *32 (quoting *First City Nat'l Bank of Houston v. Cooley (In re Cooley)*, 88 B.R. 788, 789 (Bankr. S.D. Tex. 1988)).  The court explained its reasoning:

> As [the debtors' counsel] argues, the Bankruptcy Court erred in concluding that the Malicious Prosecution Action is not a "core" proceeding because it requires interpretation of the Bankruptcy Court's Order approving the 1992 stipulation which allowed dismissal of the Adversary Proceeding filed by the [debtors] and the refiling of that action in the San Joaquin Superior Court.

> The terms and existence of that Order and the stipulation the Order approved are critical to the resolution of the Malicious Prosecution Action, in part because one who acts pursuant to the Stipulation and Order does not violate the law and one who consents to conduct cannot later claim to be aggrieved by it.  In order to address and resolve the probable cause and malice elements of the Malicious Prosecution Action, the Order of the Bankruptcy Court approving the 1992 stipulation must be interpreted. . . .

*Snider*, 2007 WL 1174441 at *33.  Further, the court concluded that the malicious prosecution complaint challenged the debtors' attorney's "conduct in his capacity as counsel for the debtors, and as counsel for the bankruptcy trustee in pursuing the [investment group's] claims.  These facts establish core jurisdiction based on the authority cited above." *Id.* at *36.  The court also found that the malicious prosecution action was a core proceeding "because it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case under bankruptcy law." *Id.* (citing *Matter of Southmark Corp.*, 163 F.3d 925 (5th Cir.), *cert. denied,* 527 U.S. 1004, 119 S.Ct. 2339 (1999)).  The court noted that the action arose out of an adversary proceeding that was moved to state court by the agreement of the parties.  It determined that "[e]very aspect of this action exists solely because of what was done or not done in a bankruptcy proceeding."

35

*Snider*, 2007 WL 1174441 at *36.  The district court reversed the bankruptcy court's rulings on striking the motion to dismiss and on remanding the malicious prosecution action to state court. *Id.* at * 45.

Although this case is not completely analogous to *Snider*, there are similarities.  First, it involves the removal of a state court action of malicious prosecution filed against the debtors' attorney.  The debtors' attorney also represented the trustee at least part of the time during the state court lawsuit which gave rise to the malicious prosecution action. In this case, the Banks Defendants represented *both* the Debtor and the Trustee in the Malpractice Lawsuit. The analysis of the basis for the Hamilton County Malpractice M/P Lawsuit and the Banks Defendants role as counsel for both the Trustee and the Debtor is closely intertwined with bankruptcy issues involved in the case. The significant difference between this case and *Snider* is that the underlying action was brought to recover property of the estate, even though the debtors thought that they were pursuing the claims for their own benefit until the district court determined that the claims had never been abandoned by the trustee.

The district court concluded:

The Bankruptcy Court erred in ruling that preemption does not apply to the Malicious Prosecution Action and that the Malicious Prosecution Action is not within the exclusive jurisdiction of the Bankruptcy Court.  There is no question that the Superior Court Action was commenced by the [debtors] and the trustee to litigate claims which were retained property of the bankruptcy estate, which had never been scheduled property of the estate.  As a matter of bankruptcy law, the Superior Court Action against [the investment group] was and remained an asset of the [debtors'] bankruptcy estate because of the trustee's failure to abandon that property as required by bankruptcy law.

*Snider*, 2007 WL 1174441 at *31.

In this case, the Debtor and the Trustee chose to specify that the Debtor was pursuing

36

recoveries that were not property of the estate. As this court found with respect to jurisdiction over the Debtor, that difference makes GKH's claims against the Bank Defendants, to the extent their actions were on behalf of the Debtor, non-core. However, the entanglement with bankruptcy law and the representation of the Trustee, in addition to representing the Debtor, leads the court to find that these same claims are related to the bankruptcy case.

### B.        Motion for Abstention

In its motion GKH also asks this court to abstain from hearing this adversary proceeding under the doctrine of mandatory abstention.  GKH further requests that, to the extent that the court concludes that mandatory abstention does not apply, the court should abstain from hearing this matter under the doctrine of permissive abstention.  The court will review both the mandatory and permissive abstention doctrines as they govern the claims brought against each of the Hamilton County Defendants.

28 U.S.C. § 1334(c) governs abstention:

(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. . . .

28 U.S.C. § 1334(c)(1)-(2).  28 U.S.C. § 1334(c)(1) covers permissive abstention and 28 U.S.C. § 1334(c)(2) describes mandatory abstention.

37

### 1.      Mandatory Abstention

In *In re Dow Corning,* the Sixth Circuit articulated a test for mandatory abstention:

> a proceeding must: (1) be based on a state law claim or cause of action; (2) lack a
> federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state
> forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be
> a non-core proceeding.

86 F.3d at 497.

The bankruptcy court in *In re Heinsohn* also addressed the plaintiff's argument that

mandatory or discretionary abstention applied.  231 B.R. at 59.  It found that mandatory

abstention under 28 U.S.C. § 1334(c)(2) did not apply because the suit for malicious prosecution

against the trustee who was acting on behalf of the estate was a core proceeding.  231 B.R. at 60.

Furthermore, the court found that "[b]ecause this case presents a peculiar issue concerning the

extent of immunity enjoyed by a bankruptcy trustee, the court concludes that this issue

dominates the state law issues and the court will not abstain."  *Id.*

As in *In re Heinsohn*, this court concludes that the mandatory abstention doctrine does

not apply to GKH's claims against the Trustee and the Banks Defendants as the Trustee's

counsel. The court has core jurisdiction over those claims.  The court has also concluded that

GKH's claims against the Debtor and the Banks Defendants in their role as his counsel are also

non-core proceedings related to the bankruptcy case.  Thus, the court will address the application

of the mandatory abstention doctrine to those non-core claims and begins by finding that the fifth

*Dow Corning* factor is present.

The court also finds that the first *Dow Corning* factor is present.  GKH's claims are state

law claims.  The second factor is present. There is no federal claim or diversity jurisdiction

present absent this bankruptcy case with respect to those claims.

No evidence has been presented regarding the fourth factor, timely adjudication in state court. Claims of malicious prosecution and abuse of process are routinely handled by Tennessee state courts. The court has some concern that a state court, especially the Hamilton County Circuit Court, has had no previous experience with this particular case and its adjudication would necessarily require a review of a myriad of facts and prior litigation history between these parties to rule on GKH's claims.  In *Parmalat Capital Finance Ltd. v. Bank of America Corp.* the Second Circuit created a four factor test for determining whether bankruptcy proceedings can be timely adjudicated in state court.  --- F.3d---, 2012 WL 539957, at *3 (2d Cir. Feb. 21, 2012) (citing its previous opinion in *Parmalat*, 639 F.3d 572, 580 (2d Cir. 2011)).  The Court noted that "[w]hether an action can be timely adjudicated in state court is a mixed question of law and fact." 639 F.3d at 580.  The court examined four factors affecting timeliness, including: "(1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Id.*

In this action the parties have not supplied the court with any fact-specific information regarding the backlog, if any, at the Hamilton County Circuit Court.  However, the court can conclude that the state law issues of malicious prosecution and abuse of process could be addressed in a reasonable period of time.  The second factor slightly favors the state court because of the expertise of this court with respect to the bankruptcy issues involved and its familiarity with the underlying allegations in the Malpractice Lawsuit. Weighing against that

39

fact, the state court has substantial expertise with the causes of action of malicious prosecution, abuse of process and attorney malpractice. While the events leading up to the Hamilton County M/P Lawsuit are quite complicated, the matters to be remanded will involve mainly an analysis of the Debtor's causes of action since the Trustee has been dismissed.  With the Trustee dismissed, the possibility of the state court's having to address bankruptcy policies regarding the administration of the estate is minimal.  The most complicated issue will be the consideration of the Banks Defendants. The Hamilton County M/P Lawsuit seeks damages against them jointly with the other Hamilton County Defendants or individually. To the extent that the Banks Defendants raise the defense of immunity, the state court will have to address bankruptcy policy in considering to what extent that defense is available to the Banks Defendants. Because of their dual representation, the court cannot find that immunity based on the Banks Defendants' association with the Trustee is a complete shield, and their liability under state law will have to be considered in any event. That consideration is within the state court's areas of expertise.

With respect to the third and fourth *Parmalat* factor -- status of this case and whether a state court proceeding would prolong the administration, this case is a Chapter 7 in the final stages of liquidation. Consequently, concerns about the need for a final resolution of GKH's claims against the Debtor are less important.  *In re Premier Hotel Devel. Group*, 270 B.R. 243, 255 (Bankr. E. D. Tenn. 2001).  Any claims resulting from a judgment in favor of GKH will not result in additional claims against the estate. GKH's request for a jury trial and its lack of consent to this court's rendering of a final ruling on the non-core matters are two additional facts weighing in favor of finding that a state court is the appropriate forum.  *Id*. at 254-55.  This court could not conduct the jury trial, and the matter would have to be sent to another court in any

40

event for trial. In addition, GKH's co-defendants have already started other state court actions involving these claims against the Debtor and the Banks Defendants as the Debtor's counsel. The court finds that with respect to "timely adjudication" GKH has carried its burden of demonstrating the fourth *Dow Corning* factor of timely adjudication.  *See In re Nat'l Century Fin. Enterps., Inc. Inv. Litigation*, 323 F.Supp.2d 861, 881 (S.D. Ohio 2004) (noting that "[t]he party seeking mandatory abstention bears the burden of demonstrating that each of the requirements are satisfied").

The most difficult factor for GKH to satisfy is the third *Dow Corning* factor and that is only with respect to the Banks Defendants.  Mandatory abstention requires that the claim be commenced in a state forum of appropriate jurisdiction. In this case, the commencement and continued existence of the state court action on which GKH relies is highly unusual.  The court has ruled that GKH's filing of its claims against the Trustee and counsel for the Trustee in Hamilton County Circuit Court was an act of contempt. *See In re Lowenbraun*, 453 F.3d 314, 321-22 (6th Cir. 2006).  The court found the filing of the suit without leave violated the *Barton* Doctrine. This court has already written extensively regarding the *Barton* Doctrine in the main bankruptcy case.  *See* [Bankr. Case No. 08-16378, Doc. Nos. 1354, 1355, 1387, 1388].  To the extent that GKH named the Banks Defendants who were representatives of the Trustee, those claims also violated the *Barton* Doctrine. *In re DeLorean Motor Co.*, 991 F.2d at 1241.

There is another unusual circumstance present in this case. Not only did GKH file the Hamilton County M/P Lawsuit, GKH filed an almost identical lawsuit against the same defendants  − Adversary Proceeding No. 11-1118 in this court − on the *same* day.  GKH's current motion seeks to have the two adversary proceedings consolidated.

41

The court concludes that the only action "commenced in state court" was one which was filed in contempt of this court as to the Trustee and as to the Banks Defendants and the fact of that contempt calls into question the appropriateness of that jurisdiction. Those same actions were commenced in this forum. *See* [Adv. Proc. No. 11-1118, Doc. No. 1; Adv. Proc. No. 11-1121, Doc. No. 1-2]. Although it had filed a motion for leave to file the lawsuit in this court, it did not wait until this court's ruling to file the Hamilton County M/P Lawsuit. In addition, GKH's statute of limitations argument as the reason for the filing without leave of this court is flawed. The court analyzed that defense and the other defenses raised in GKH's pleadings in its memorandum granting the Trustee's Motion for Contempt, filed simultaneously with this memorandum. Further, in its original motion for leave to file suit in Bradley County, GKH never mentioned its intention to sue the Debtor or his attorney. [Bankr. Case No. 08-16378, Doc. No. 1200]. The court first had notice of GKH's intention to sue the Debtor and his attorney when GKH filed Adversary Proceeding 11-1118. GKH first argued to this court about its need to sue the Debtor in its motion to alter or amend this court's judgment pertaining to the denial of the motion for leave. *See* [Bankr. Case No. 08-16378, Doc. No. 1406, 1474, 1475]. The Debtor's counsel was added only when the Hamilton County M/P Lawsuit and the Bankruptcy M/P Lawsuit were filed. In both lawsuits, GKH refers to the Banks Defendants as "their attorneys" throughout the complaints and does not allege separate counts against the Banks Defendants in their separate roles. [Adv. Proc. No. 11-01118, Doc. No. 1; Adv. Proc. No. 11-01121, Doc. No. 1-2].

Thus, under the facts as presented in this particular case, the court concludes that GKH did not bring its state law claims against the Banks Defendants in a forum of appropriate

42

jurisdiction with respect to the Banks Defendants because that filing was brought without leave

of this court.  There was no similar prohibition against suing the Debtor. Therefore, all five of the

*Dow Corning* factors have been met only with respect to the Debtor.

### 2.     Permissive Abstention

GKH requests that, even if this court does not find the mandatory abstention doctrine

applicable, this court abstain from hearing this proceeding pursuant to the permissive abstention

doctrine under 28 U.S.C. § 1334(c)(1).  28 U.S.C. § 1334 also permits bankruptcy courts to

abstain from hearing a matter.  *See* 28 U.S.C. § 1334(c)(1).  A bankruptcy court may abstain

from both core and non-core proceedings.  *See In re Best Reception Sys., Inc.*, 220 B.R. at 952.

Bankruptcy courts in this Circuit have outlined a list of twelve factors to consider when

determining whether to abstain under the permissive abstention doctrine.

> (1) the effect or lack thereof on the efficient administration of the estate if a court
> recommends abstention; (2) the extent to which state law issues predominate over
> bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4)
> the presence of a related proceeding commenced in state court or other non-
> bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C.A. §
> 1334; (6) the degree of relatedness or remoteness of the proceeding to the main
> bankruptcy case; (7) the substance rather than form of an asserted core
> proceeding; (8) the feasibility of severing state law claims from core bankruptcy
> matters to allow judgments to be entered in state court with enforcement left to
> the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the
> likelihood that the commencement of the proceeding in bankruptcy court involves
> forum shopping by one of the parties; (11) the existence of a right to a jury trial;
> and (12) the presence in the proceeding of non-debtor parties.

*In re Best Reception Serv., Inc.*, 220 B.R. at 953 (referencing the factors first enumerated by

Judge Mahoney in *Republic Readers Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic*

*Reader's Service, Inc.)*, 81 B.R. 422, 429 (Bankr. S.D. Tex. 1997)) (other citations omitted).

In light of this court's accompanying ruling with respect to the Trustee's Motion to

43

Dismiss and its holding that mandatory abstention applies to the Debtor, the court will address

the considerations for permissive abstention only as to GKH's claims against the Banks

Defendants.

(a)     *Efficient Administration of the Estate*

Having found that the Trustee is immune, the resolution of the remaining Hamilton

County Defendants' claims will have a minimal effect on the administration of the estate. The

Banks Defendants were only special counsel and took the case on a contingent fee basis. They

have made no claim for reimbursement of their costs, and they have no ongoing representation of

the Trustee which might be hindered by their involvement in a state court suit. Their involvement

as counsel for the Trustee does raise the issue of how their liability may affect the administration

of the estate generally and whether the policies favoring immunity as stated in *In re Heinsohn*

and *Lowenbraun* would be affected by a finding of liability by a state court.  The court views the

impact of a ruling imposing liability on the Trustee's counsel for the administration of a

bankruptcy case to be minimized by the unusual facts of this case – i.e., counsel representing the

Trustee also chose to represent the Debtor and pursued both property of the estate and recoveries

for a Chapter 7 Debtor.  Because of the court's concern about the chilling effect of a trustee's

liability for the pursuit of estate assets, the court finds that this factor favors retention of the

claims against the Banks Defendants. Because of the particular facts of this case, the extent of

that favor is only slight.

(b)     *The Extent to Which State Law Claims Dominate over Bankruptcy Issues*

The second factor asks the court to analyze the extent to which state law claims dominate

the bankruptcy issues.  Malicious prosecution and abuse of process are state law claims;

44

however, they are state law claims predicated on acts taken by the Banks Defendants within the context of the Debtor's bankruptcy. One of the elements of their successful prosecution is whether the Trustee or the Debtor had probable cause to bring the actions. An analysis of probable cause in their decision to bring causes of action for the Trustee will require a review of the bankruptcy law related to property of the estate as defined by 11 U.S.C.§ 541 and possibly §§ 348 and 1115(a). Whether there was probable cause for bringing a conflicts or breach of fiduciary obligation claim after one year will require an analysis of 11 U.S.C.§ 108 and the bankruptcy cases construing it. Finally, the state court may have to address an immunity defense. However, these bankruptcy issues will not be involved in the consideration of their role in representing the Debtor. Since the state court will be looking at both, the court does not find that the state law claims dominate over the bankruptcy issues. This factor is neutral.

> (c)    *The Difficulty or Unsettled Nature of the Applicable Law*

As to the third factor, the court also determines that the state law claims of malicious prosecution and abuse of process are not particularly difficult, but the underlying questions of attorney malpractice and conflicts of interest are complicated.  There are also bankruptcy issues related to property of the estate that are less settled, and the issues of immunity, preemption and the tolling of the statute of limitations are complicated.  This factor favors retention of the claims in this court.

> (d)    *Presence of Related Proceeding Commenced in State Court*

Mr. Anderson and Mr. Bowers, co-defendants with GKH in the 50 Acre Lawsuit and the Malpractice Lawsuit, have brought individual suits in this court against the Trustee and his counsel. They have also represented to the court that they have already bifurcated their claims

45

against the Banks Defendants in their role as counsel for the Debtor by also filing suits regarding the Malpractice Lawsuit in state court against the Debtor and Mr. Banks. Complaint, n. 1; [Adv. Proc. No. 1169, Doc. No. 1; Adv. Proc. No. 11-1170, Doc. No. 1]. These new bankruptcy and state court actions are also based on malicious prosecution and abuse of process. Neither the Debtor nor the Banks Defendants have chosen to remove these lawsuits to this court as of the date of this memorandum. Given that the actions are on parallel tracks regardless of this court's determination, this factor appears to be neutral with respect to the Banks Defendants in their capacity as counsel for the Trustee. Abstention would remove the risk that there may be inconsistent verdicts between this court and a state court related to GKH's claims against the Banks Defendants in their role as the Debtor's counsel in the pursuit of property that was not property of the estate.  The existence of related state court proceedings involving the Debtor favors abstention.

(e)      *Jurisdictional Basis Other Than § 1334*

The fifth factor regarding the existence of a jurisdictional basis other than 28 U.S.C. § 1334 weighs in favor of state court adjudication of the claims against the Banks Defendants as Debtor's counsel. There is core jurisdiction for the claims of GKH against the Banks Defendants as counsel to the Trustee, but there is no other federal jurisdictional basis for retaining the claims. The court finds this factor slightly favors retention because of the independent basis for jurisdiction.

(f)      *The Degree of Remoteness or Relatedness to the Case*

The court has previously found that the actions against the Banks Defendants are both core and non-core matters related to the case. However, having found that mandatory abstention

46

applies to the Debtor and that a state court proceeding only minimally affects the administration

of the estate, this factor weighs in favor of abstention.

      (g)     *The Substance as Opposed to the Form of an Asserted Core Proceeding*

      The application of this factor is more awkward in the context of this case than in some

cases in which the parties are attempting to find some remote connection to the bankruptcy case

to obtain federal bankruptcy jurisdiction.  In determining whether a malicious prosecution and/or

abuse of process claim against a representative of a Trustee is a core proceeding, the courts look

not to the malicious prosecution/abuse of process case but rather to the underlying lawsuit to

determine whether the action is core or non-core. *In re Heinsohn*, 247 B.R. at 242-45, The court

has already found that GKH's claims are core with respect to the Banks Defendants as counsel

for the Trustee. As for their role as Debtor's counsel, taking at face value the allegations of the

Malpractice Lawsuit that the representation of the Debtor was to pursue damages that were not

property of the estate, GKH's claims against the Banks Defendants in this capacity appear to be

non-core proceedings.  While the court has expressed some concerns that the representation was

not that clear cut, neither the Debtor nor the Banks Defendants have offered any further

explanation to alter the specific language in those allegations.  There is substance to find both

core and non-core proceedings involved in the claims against the Banks Defendants. This factor

is neutral.

      (h)     *Feasibility of Severing State Law Claims*

      The court finds that it is feasible to separate the claims against the Trustee from the

claims against the Debtor. It is much more difficult to separate the claims against the Banks

Defendants to the extent that those claims and the defenses to those claims may depend on which

role the Banks Defendants were playing at any time during the Malpractice Lawsuit litigation. However, the court could sever the proceeding into those two roles – (1) Banks' role as counsel for the Trustee and (2) Banks' role as counsel for the Debtor – and perhaps a third role. The third role would be the Banks Defendants being held liable separate and apart from either the Trustee or the Debtor. Since it is only the Banks Defendants the court must consider in its permissive abstention analysis, the court concludes that it could sever GKH's remaining claims for malicious prosecution and abuse of process from only the Banks Defendants' actions as counsel for the Trustee.  To the extent that the Banks Defendants may wish to raise the bankruptcy defense of immunity, they could do so, but would have to demonstrate what actions were taken on behalf of the Trustee and could address the bankruptcy issues related to probable cause.  Any other defense would be related to their representation of the Debtor and could be severed from the bankruptcy adversary proceeding. This factor favors severing claims against the Banks Defendants into two parts and retaining jurisdiction over those claims that relate to representation of the Trustee.

    *(i)*       *Burden on this Court's Docket*

With respect to the consideration of the burden on this court's docket, there have been no allegations that this case will take an undue amount of time for this court.  To the extent that the court has other malicious prosecution matters pending before it, retaining this matter will not provide any efficiencies because those malicious prosecution actions are based on other lawsuits brought by the Trustee without the complicating participation by the Debtor.  To the extent this case reflects the first adversary proceeding in which the Debtor was pursuing recovery for himself, it will help this court's docket to abstain and send those claims related to the

48

representation of the Debtor to the state court.

       *(j)*     *Request for a Jury Trial*

An additional factor is the existence of a request for a jury trial. This court cannot conduct a jury trial without the parties' consent. No such consent exists. From a review of the complaints in both the Hamilton County M/P Lawsuit and the Bankruptcy M/P Lawsuit, GKH is seeking only money damages for two torts. These claims appear to be actions at law for which a jury trial is appropriate. The defendants have not addressed whether there are reasons that GKH is not entitled to a jury trial. As the court in *Snider* found, this court finds that the request for a jury trial may not be reason, in and of itself, to abstain from hearing this matter; however, the court finds it is a factor in favor of abstention.

       *(k)*     *Evidence of Forum Shopping*

Unlike the litigants in *In re Best Reception*, whom the court found were shopping for the **bankruptcy court** as their court of preference, as explained *supra*, GKH appears to be making every effort to have its issues addressed in the **state court**.  GKH added the Debtor after the Bradley County Leave Motion was denied. It is the Debtor's involvement that creates the jurisdictional difficulties. GKH added the Debtor and contended that he was a necessary party for its suit against the Trustee, while also arguing that its claims against the Debtor could have no conceivable impact on the administration of the estate. GKH filed the Hamilton County M/P Lawsuit in violation of this court's order, and then used its commencement to argue the applicability of mandatory abstention. Finally, GKH has recently filed two more state court suits bifurcating the plaintiff's claims against the Banks Defendants, creating related proceedings in state court, one of the factors for this court to consider in addressing permissive abstention.

Based on the foregoing, the court finds that there is a likelihood that GKH is forum shopping and is seeking to create a basis on which to have this court abstain from hearing matters related to the Trustee and his counsel.  This factor favors retention of the claims against the Banks Defendants since they were counsel for the Trustee.

   *(l)  Non-debtor Parties*

   Finally, the only non-debtor party in the case is GKH. All of the other parties are or have been the representative of the estate or counsel for that representative.  Even GKH was the Debtor's former counsel. It has filed a substantial claim in the case and his been involved in the case on its own behalf and on the behalf of other clients. Thus, all of the parties have been enmeshed in the Debtor's bankruptcy case for quite some time. This factor is neutral.

   After reviewing all of the pertinent factors, the court acknowledges it is a close question but concludes that the facts that (a) it must abstain from the proceeding against the Debtor, (b) two trials related to the Banks Defendants would be inefficient and (c) GKH's right to a jury trial tip the scales in favor of abstention. Those factors outweigh the presence of bankruptcy issues that may be involved in the litigation of the related claims as a result of the Banks Defendants' dual role.  The court concludes that it will abstain from hearing the claims against the Banks Defendants.

   **C.  Consolidation**

   As a last request in its motion, GKH asks this court to consolidate this adversary proceeding with Adversary Proceeding No. 11-1118 if the court declines to remand or abstain from the proceeding.  Although the court has determined to abstain from hearing the remaining claims in this proceeding, the court finds that consolidation is still warranted to avoid the

50

duplication of efforts arising from the existence of two identical lawsuits.  The court will grant GKH's request to consolidate this adversary proceeding with Adversary Proceeding No. 11-1118 for the reasons given herein.

### III.   Conclusion

The court finds that the proceeding was properly removed to this court. It finds that the claims against the Trustee and the Banks Defendants for actions taken on behalf of the Trustee are core proceedings. The claims against the Debtor and the Banks Defendants as Debtor's counsel or against them separately are not core, but those claims are related to the bankruptcy case.  The court finds that mandatory abstention applies to the claims against the Debtor. Further, the court concludes it will abstain from hearing claims against the Banks Defendants under permissive abstention.  GKH's motion will be granted, and this court will consolidate the remaining claims in this adversary proceeding with Adversary Proceeding No. 11-1118.

A separate order will enter.

# # #